*Decision will be entered under Rule 50.*

THE EVERGREENS, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 96513, 98635. Promulgated October 7, 1942.

*Neilson Olcott, Esq., Valentine B. Havens, Esq.,* and *Charles B. McInnis, Esq.,* for the petitioner.
*F. Samuel Gettle, Esq.,* for the respondent.

822

OPINION.

OPPER: By order of the Board the issues here were severed so as to consider separately petitioner's contention that the present question has already been determined in a prior proceeding binding upon both parties. A decision on that point in petitioner's favor would have disposed of the case without the introduction of additional testimony. Further proceedings were accordingly postponed pending disposition of this preliminary question.

The basic issue before us is the March 1, 1913, value of certain cemetery property sold by the petitioner in the years 1934 and 1935. That, as petitioner concedes, is different from the value of other lots

sold from 1929 through 1933, the ultimate issue in the prior proceeding on which it relies (Docket Nos. 71187, 72271, 75422, 83294, and 83458, memorandum opinion entered May 11, 1937). It is clear, however, that as between the same parties "a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery, cannot be disputed in a subsequent suit by the same parties or their privies." *Southern Pacific Railroad Co.* v. *United States,* 168 U. S. 1, 48. The rule applies to tax cases, and governs even if the question arising in a subsequent action between the same parties is "upon a different claim or demand." *Tait* v. *Western Maryland Ry. Co.,* 289 U. S. 620. Though the basic issue is different, there may still be aspects of a prior action binding upon the parties under the principle of *res judicata,* sometimes referred to as estoppel. "While the effect of the judgment as an estoppel is limited to matters involved in litigation, it is equally conclusive whether the point decided was of itself the ultimate vital point or only incidental, if its determination was necessary to the judgment. 'A judgment concludes not only the technical fact in issue but also every component fact necessarily involved in its determination.'" 2 Freeman on Judgments, 5th Ed., 1463.

This application of the principle of *res judicata* is not to be confused with that in which a former adjudication of the same issue justifies a complete plea in bar. Petitioner recognizes this. It urges, however, that in its disposition of the prior proceeding the Board necessarily arrived at decisions, including principally the significant one of the March 1, 1913, value of petitioner's property, which were material to its conclusion and that for that reason the question of value on the basic date, even though an issue here with respect to land sold in subsequent years, is concluded.

It is alleged in the petition in the prior proceeding that "the average value of the unsold area of petitioner's cemetery property on March 1, 1913, was not less than three dollars ($3.00) per square foot." This, among other allegations, was denied in respondent's answer. As the opinion shows, the case was presented to the Board by each party in a manner which, if accepted, would have required for the determination of value that the figure be computed by dividing the basic-date value of all salable property by the area available for sale, or, in other words, by reaching an average value per square foot of all the property susceptible of disposition.

Although rejecting the formula proposed by both litigants, the findings in the prior proceeding nevertheless demonstrate that the Board did determine an average square foot value for the fully improved property as of the basic date. It is true that determination of an average value was requisite there only in order to compute

the March 1, 1913, worth of the lots then in issue. But no effort was made by the Board nor apparently by the parties to distinguish between the various presently salable lots whenever sold; and the usefulness of an average figure arose only from the tacit assumption apparently accepted by the Board and both parties that for purposes of valuation the square feet of salable land could be treated as interchangeable. It seems to us to follow that a finding by the Board of average value governs, as its term implies, the over-all value of all the square feet, and therefore of each one, regardless of the purpose for which the value may be material.

The specific finding was that "the fair market value of the improved land available for sale for burial purposes on March 1, 1913, was at that date $1.55 a square foot."

We are, therefore, of the opinion that the Board's determination in the previous proceeding between the parties hereto is binding with respect to all the improved land available for sale on March 1, 1913, and it is on the strength of that prior adjudication and not upon independent evidence that the values of the plots sold therefrom in the taxable periods here in issue have been included in our findings of fact. *Chicago Cemetery Association* v. *United States*, 19 Fed. Supp. 228.

But some land was sold by petitioner in the instant years which was unimproved on March 1, 1913. There is present here, therefore, an issue which was not in controversy in the prior proceeding, namely, the value on the basic date of petitioner's unimproved land. This feature presents a more difficult question.

It is pressed upon us with great emphasis that the same reasons require us to find a corresponding value for the partially improved land. The parties have stipulated the cost of improvement required to bring these portions to a comparable condition with the land which was fully improved in 1913. We are hence committed, the argument runs, to the purely arithmetical process of reducing the fully improved valuation by the cost of improvement.

This is said to be so for three somewhat related reasons: First, the value of the improved land is *res judicata* in this proceeding quite as much for purposes of appraising the partially improved as the wholly improved land, on the theory that a fact once found is so for all purposes; second, that it is necessary that the several findings in this proceeding shall not be inconsistent with each other, and that any figure adopted for the unimproved land can comport with that for the improved only if the difference is no greater than the cost of necessary improvements; and, third, that in the prior proceeding the Board adopted a method or principle for valuing petitioner's property which is equally binding here and requires us to look to

sales of comparable property at about the basic date as the exclusive test with respect to all parts of the cemetery, unimproved as well as improved.

We can not agree, however, that we are bound in our consideration of the value of the unimproved land by the previous determination as to the property which was fully improved. We have accepted it here in considering the lots sold from the fully improved sections only because, the present issue being identical, we consider it conclusive. We are not required in that connection to reexamine it for, if necessary, that "decision makes white black; black, white; the crooked, straight; the straight, crooked." Bouvier, Law Dictionary.

But in applying that result to the partially improved portions of the cemetery, one inquiry must be "whether the point or question to be determined * * * is the same as that litigated and determined in the original action." *Tait* v. *Western Maryland Ry. Co., supra.* It seems to us clear that in the present situation that is not so. While there may be a discoverable relation between the appraisal of wholly and partially improved property, it seems manifest that they are not the same thing. Hence we regard this aspect of the case not only as presenting a different claim or demand, but as involving a different issue from that previously decided.

That a mathematically computable relationship may exist between the two determinations is in effect the foundation for petitioner's further contention that any value we may place upon the partly improved portions can not vary by more than the cost of improvement from that conclusively fixed for the improved portions. But this, too, we think an unwarranted extension of the principle of *res judicata*. If our prior determination lacks conclusiveness because the issue is different, then the merely fortuitous inclusion of a foreclosed issue can not impose consistency here, any more than if this were a separate proceeding, or one between different parties. Nor do we grant that consistency is necessarily absent.

*West View Cemetery Assn.* v. *Commissioner* (C. C. A., 5th Cir.), 95 Fed. (2d) 714, and *Fairmount Cemetery Assn.* v. *Helvering* (App. D. C.), 92 Fed. (2d) 496, cited by petitioner for the proposition that unimproved land must be valued by deducting from the value of improved land the cost of improvement, were both decided upon an erroneous view of the *Elmhurst* case [2] made manifest by the Supreme Court's subsequent affirmance of *Montrose Cemetery Co.* v. *Commissioner* at 309 U. S. 622. For example, the *West View* opinion takes the position that "it [is] quite evident that the Supreme Court, in the *Elmhurst* case * * * rejected the discount method contended for by the Commissioner * * *." This is an inter-

---

[2] *Elmhurst Cemetery Co. of Joliet* v. *Commissioner*, 300 U. S. 37.

826

pretation repudiated, not only by the Board, see, e. g., *Oak Woods Cemetery Association*, 38 B. T. A. 121, 134; affd. (C. C. A., 7th Cir.), 111 Fed. (2d) 863; certiorari denied, 308 U. S. 616, but even by the present petitioner, which concedes "that the *Elmhurst* case does not compel the application of an exclusive method."

We think it no coincidence that these are the cases to which petitioner is forced to resort for authority on this point. For it seems apparent that, if the time element is a factor in estimating salability, a longer period may justifiably be assumed for the disposition of unimproved than of improved sections.

In fact, in his dissenting opinion in the *West View* case, Judge Sibley referred to "the unsold land in the improved area" and thought that "much of it would have to wait twenty or thirty years or more to find a sale. The semi-improved area would have to wait much longer * * * ." He went on to point out that the Board "reduced or discounted the fair value of the semi-improved area much more because it would probably have to wait much longer and would have to have money spent on it to sell at all."

This can itself be the element which furnishes a basis in fact for attributing to unimproved land a lower value than mere reduction by the cost of improvement. Essentially, that is the very position taken here by petitioner; for the sales of unimproved land did not begin for twenty years, and on that ground petitioner denies the relevance of figures showing the intervening history of this same cemetery, and population growth and interment statistics, which petitioner asserts would be relevant only in valuing the improved land. It would not be unreasonable for a prospective purchaser, appraising the situation in 1913, to give consideration to this prospect of delay. And we have ourselves accepted the figures in question only because they furnish such evidence as there is of a trend.

Finally, we find no justification for the suggestion that the method or principle of valuation adopted by the Board in the prior proceeding requires us to look here only to the record of actual sales to the exclusion of any other relevant considerations. The approach employed by the Board might, as we have observed, be entirely at variance in dealing with unimproved sections. Nor are we clear that the disposition of the question of law involved in ruling upon an appropriate principle of valuation is one by which we can assume the Board would be bound where the condition of the record and the state of the law have changed.

Be that as it may, however, there is nothing in the previous determination which so limits its effect. On the contrary, it contains specific language showing that the Board thought "that some consideration should be given to the undisputed fact that many years

must pass before petitioner's property will be sold out"; and that "This is emphasized by the fact that its sales over the fourteen year period from 1900 to 1913 had averaged 61,630 square feet and it had available for sale over 4,000,000 square feet at the basic date." We are accordingly unable to concur in petitioner's position, and are of the view that we may consider here the valuation to be placed upon the portions of the cemetery which were partly improved on March 1, 1913, entirely without reference to the prior adjudication as to the fully improved property, or the value thereof, or the method used to find that value.

Being of that opinion, and after the issues had been severed, as noted at the outset of this discussion, the Board issued its further order pursuant to which testimony was taken on the question of the value of the partially improved land. As was to be expected, petitioner opposed the admission of all evidence inconsistent with the improved land value less cost of improvements. Rulings taken under advisement at that hearing are now made in respondent's favor for the reasons already set forth.

From the facts and opinion testimony there submitted, and placing particular weight on the price and volume of contemporary sales, we have come to the conclusion that as of March 1, 1913, 35 years was a reasonable average anticipation for the disposal of the partly improved land; that considering lots and graves together, $3 was a reasonable anticipated average gross return per square foot when sold; that costs of operation and expenses of sale could be expected to reduce this amount by 25 percent, leaving a net return of $2.25; that 6 percent is a reasonable interest factor to be employed and that at that figure the present value of one dollar 35 years hence is 13.011 cents; all of this resulting in a fair market value per square foot of .13011 times $2.25, or slightly less than 30 cents per square foot.

We have considered the other evidence in the case, but find it leads to the same result, except that the witnesses produced and vouched for by respondent arrived at higher figures, at least for the land sold in 1934, which is by far the greatest bulk. Since one witness' conclusion was 33 cents and the other 35, we have found as a fact that the land sold in 1934 was of a fair market value on the basic date of the higher of these figures. And since the distinction between the two parcels is none too clear on this record, and the second is insignificant, we have found, purely for purposes of this proceeding, that the particular land sold in 1934 and 1935 was of that basic value.

It is true that one of the witnesses made a further downward adjustment of basis on the ground that the land sold in 1934, which the city of New York bought for parkway purposes, included parts which would be waste if devoted to cemetery use. This reduced his average

square foot figure for that particular parcel. But while the presentation of the case leaves this point in some doubt, we take the view that any such adjustment is inconsistent with the stipulated facts, and hence unsupportable. It is agreed that the land in question was part of the 1,143,925 square feet of land which was partially improved in 1913. That figure is a net quantity from which there has already been deducted the necessary wastage. Hence we think that all of the land sold should be regarded as included in the salable area, and that in computing its gross value the adjudicated basis should be multiplied by the total square footage which it contained.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

MELLOTT, concurring in part and dissenting in part: While I concur in the holding of the majority that the prior decision of the Board is *res adjudicata* as to the value of the lots in the improved sections of the cemetery, I must respectfully dissent from the holding that it is not also *res adjudicata* as to the lots in the unimproved sections.

The record in the prior proceedings indicates that the Board considered the value of all of petitioner's cemetery property to be a relevant fact in determining the issue before it. This is evident not only from the findings, part of which are set out above, but also from the opinion of the Board. Therein it was said: "We also think that some consideration should be given to the undisputed fact that many years must pass before petitioner's property will be sold out. Petitioner estimates the period at 45 years from March 1, 1913; the respondent uses a 65 year period. Whichever period is nearer right, it is plain that the petitioner must wait a considerable period of time before it realizes anything from a part of its property * * *." This statement apparently had reference, at least in part, to the unimproved sections of the cemetery. That it was so construed by the parties is indicated by the computation filed by the respondent, the essence of which is shown in the following schedule:

|  |  | sq. ft. |
|---|---|---|
| Total area of cemetery March 1, 1913 |  | 10,912,825 |
| Deduct: | sq. ft. |  |
| Portion devoted to roads, walks, etc. prior to March 1, 1913 | 1,732,308½ |  |
| Lands sold prior to March 1, 1913 | 4,222,745 |  |
|  |  | 5,955,053½ |
| Lands unsold March 1, 1913 (including 1,411,354 sq. ft. unimproved) |  | 4,957,771½ |

| Deduct, per Board's findings: | *sq. ft.* | |
|---|---|---|
| Waste land | 150, 150 | |
| Lands estimated and found to be necessary for needed drives, walks, etc | 758, 743 | *sq. ft.* |
| | | 908, 893 |
| Total unsold improved and unimproved land | | 4, 048, 878½ |
| March 1, 1913 value—4,957,771½ x $1.55 | | $6, 275, 761. 68 |
| Deduct: | | |
| Value recovered for years 1913 to 1928, incl. | | 1, 904, 353. 98 |
| Unrecovered value January 1, 1929 | | 4, 371, 407. 70 |

In the prior proceeding it was found that the cost of making the necessary improvements in the unimproved sections would be "from 8 cents to 20 cents a square foot." Since petitioner is relying upon the value determined in that proceeding, probably the most unfavorable estimate of cost should be used. As a matter of fact petitioner inferentially concedes that the 20-cent figure should be used. This would result in a holding, which I think should be made, that the March 1, 1913, value of petitioner's improved property was, as determined by the majority, $1.55 per square foot and its unimproved property $1.35 per square foot.

LEECH agrees with the above.