DAVID C. GOODWIN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2087–77.     Filed October 31, 1979.

David C. Goodwin, pro se.
*James F. Kearney,* for the respondent.

---

SCOTT, *Judge:* Respondent determined deficiencies in Federal income tax and additions to tax under section 6653(b)[1] (fraud) for the calendar years and in the amounts listed below:

| Year | Deficiency | Additions to tax sec. 6653(b) |
|------|-----------|------------------------------|
| 1968 ........... | $1,926.30 | $963.15 |
| 1969 ........... | 2,379.31 | 1,189.65 |
| 1970 ........... | 2,666.57 | 1,333.29 |

In his answer, respondent asserts that the addition to tax for 1969 should be increased by $481.18, for a total addition to tax of $1,670.83 for 1969.

The following three issues are presented for our consideration: (1) Whether petitioner is estopped by his conviction of violating section 7206(1) by filing false returns which he knew substantially understated his total reportable income for each of the years 1968, 1969, and 1970 from denying in this case that his returns were false in that the income reported thereon was substantially understated; (2) whether there is an underpayment of tax any part of which is due to fraud for each of the years 1968, 1969, and 1970; and (3) whether petitioner failed to report income for the years in the amounts determined by respondent or in any other amounts.[2]

### FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petition in this case was filed, petitioner was a legal resident of Trenton, N.J.

During the years in issue, petitioner was a committeeman and during part of this time mayor of Hamilton Township in Mercer County, N.J., and was in charge of the road department of that township. He was also the Chief of the Bureau of Recreation of the State of New Jersey. He had no other gainful employment although he held unpaid positions as an officer of the American Legion and State Director of American Legion Baseball.

On February 13, 1974, a United States grand jury for the

---

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954, as in effect for the taxable years in issue.

[2]The other contested adjustment, determination of petitioner's medical expense deduction, is solely derivative; it depends on our resolution of the underreporting issue.

District of New Jersey, sitting at Newark, returned an indictment against petitioner charging him with five counts of extortion involving vendors and contractors selling to Hamilton Township during 1969 and 1970, and also charging him with three counts of violating section 7206(1) for 1968, 1969, and 1970—counts VI, VII, and VIII. Count VI of the indictment is as follows:

### COUNT VI

That on or about the 9th day of February, 1969, in the District of New Jersey, the defendant herein:

#### DAVID C. GOODWIN

a resident of Trenton, New Jersey, did wilfully and knowingly make and subscribe and cause to be made and subscribed, a United States Joint Income Tax Return (Form 1040) for the calendar year 1968, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which said income tax return he did not believe to be true and correct as to every material matter, in that it was stated on Line 7, Page 1, of said income tax return that total income was the sum of $18,747.68, whereas, as he then and there well knew and believed, the correct total income for the period reported was an amount substantially in excess of the reported total sum of $18,747.68.

In violation of Section 7206(1), Internal Revenue Code, Title 26, United States Code, Section 7206(1).

Counts VII (relating to 1969) and VIII (relating to 1970) of the indictment are identical to count VI except as to the years involved and the dollar amount of reported income. On November 6, 1974, petitioner entered a plea of guilty to counts VI, VII, and VIII of the indictment which are alleged violations of section 7206(1). On March 19, 1975, a judgment with respect to the indictment returned on February 13, 1974, was entered against petitioner by the United States District Court, District of New Jersey. This judgment stated in part as follows:

|  |  |  |  |  | Month | Day | Year |
|---|---|---|---|---|---|---|---|
| In the presence of the attorney for the government the defendant appeared in person on this date ................ | | | | | 3 | 18 | 75 |
| * | * | * | * | * | * | * | |
| WITH COUNSEL * * * | | | | | | | |
| * | * | * | * | * | * | * | |

218

|  | |
|---|---|
| PLEA | ) GUILTY, and the court being satisfied that * * * <br> ) there is a factual basis for the plea, on Counts <br> ) 6, 7, and 8. |

\*     \*     \*     \*     \*     \*     \*

FINDING &     ) Defendant has been convicted as charged of the
JUDGMENT      ) offense(s) of filing false and fraudulent income
               ) tax returns.
               )
               ) 26:7206(1)

SENTENCE      The court asked whether defendant had anything to
OR             say why judgment should not be pronounced. Because
PROBATION    no sufficient cause to the contrary was shown, or
ORDER       appeared to the court, the court adjudged the
defendant guilty as charged and convicted and
ordered that: The defendant is hereby committed to
the custody of the Attorney General or his authorized
) representative for imprisonment for a period of
) two (2) years on Count 6, execution of term sentence
) suspended and the defendant is placed on probation
) for a period of two (2) years from this date. It is
further adjudged that the defendant do pay a fine of
$2,000.00 by the end of the period of probation. It
is further ordered and adjudged that imposition of
sentence on Count 7 and 8 is hereby suspended.

It is further ordered and adjudged that Counts
1, 2, 3, 4, and 5 are hereby dismissed.

During 1968, 1969, and 1970, petitioner made it known to some persons seeking to do business with Hamilton Township that they would have to make contributions "to the party" (i.e., to the Harry E. Lieberman Democratic Club of Hamilton Township, hereinafter sometimes referred to as the Democratic Club) in order to get the township's business. Sometimes petitioner specified the amount. Sometimes petitioner stated that the amount was to be paid to him in cash. In a number of cases, the amounts so paid to petitioner were then paid by him to A. Harry Glogoff, treasurer of the Democratic Club. Some of the amounts so paid to petitioner were acknowledged by letters from the Democratic Club to the payors.

Table I shows some of the sales of equipment, materials, and services made by vendors or contractors to Hamilton Township during the years in issue:

## TABLE I

| Date | Vendor or contractor | Amount |
|---|---|---|
| On or about Mar. 19, 1968 | North Jersey Equipment Co | $15,460.00 |
| On or about Apr. 23, 1968 | W. E. Timmerman Co | 15,460.00 |
| Various dates in 1968 | Barrett Paving Co., Inc | [1]198,105.69 |
| On or about July 2, 1969 | Colonial Garage, Inc | 37,281.00 |
| Various dates in 1969 | Barrett Paving Co., Inc | [1]129,811.27 |
| On or about May 7, 1970 | North Jersey Equipment Co | 16,175.00 |
| On or about June 10, 1970 | Lynn Equipment Co | 29,900.00 |
| On or about July 23, 1970 | Colonial Garage, Inc | 13,350.00 |
| Various dates in 1970 | Barrett Paving Co., Inc | [1]124,643.19 |

[1]The total amounts paid to Barrett Paving Co., Inc., for work performed for Hamilton Township are comprised of many items. Copies of invoices have been admitted as stipulated exhibits; also a worksheet compiling the invoices has been stipulated. Unfortunately, a comparison of the two reveals a number of invoices that do not appear on the worksheet and also some amounts listed on the worksheet for which there are no invoices in the record. The amounts set forth in the table represent the amounts which appear both on the worksheet and on the invoices.

Respondent, in the notice of deficiency, determined petitioner received unreported income in the form of kickbacks from companies doing business with Hamilton Township, as indicated in table II:

## TABLE II

| Date | Payor | Amount |
|---|---|---|
| *1968* | | |
| Mar. 19 | North Jersey Equipment Co | $750.00 |
| May 5 | W. E. Timmerman Co | 750.00 |
| May 29 | Barrett Paving Co., Inc | 701.25 |
| July 24 | do | 1,371.50 |
| Aug. 22 | do | 587.50 |
| Sept. 25 | do | 736.37 |
| Nov. 27 | do | 1,050.00 |
| Dec. 17 | do | 500.00 |
| Total | | 6,446.62 |
| *1969* | | |
| May 28 | Barrett Paving Co., Inc | $690.00 |
| June 25 | do | 700.00 |
| Aug. 1 | Colonial Garage, Inc | 2,355.00 |
| Aug. 14 | Barrett Paving Co., Inc | 1,500.00 |

Oct. 8 ............................ do ............................ $500.00
Nov. 3 ........................... do ............................ 1,000.00

  Total ...................................................... 6,745.00

*1970*

Apr. 30 .......... North Jersey Equipment Co .......... $800.00
May 21 .......... Barrett Paving Co., Inc ................ 200.00
June 19 ........ Lynn Equipment Co., Inc ............. 1,500.00
July 8 .......... Barrett Paving Co., Inc ................ 1,150.00
Aug. 4 .......... Colonial Garage, Inc .................... 2,670.00
Aug. 13 ........ Barrett Paving Co., Inc ................ 1,000.00
Nov. 25 ...................... do ............................ 800.00

  Total ...................................................... 8,120.00

Respondent's employees prepared a schedule showing contributions to the Democratic Club that were acknowledged by letters and which appear to have been deposited in a checking account of the Democratic Club, as indicated in table III:

Table III

| Date | Party involved | Amount | Check | Cash |
|---|---|---|---|---|
| Aug. 5, 1968 | Patrick Cleary ............................ | $25 | | $25 |
| Aug. 8, 1968 | Barrett Paving Co., Inc ................ | 450 | | 450 |
| Aug. 29, 1968 | Gil Frazier-Scheideler Equipment Co., Inc ...................... | 250 | | 250 |
| Oct. 7, 1968 | Colonial Garage, Inc ...................... | 500 | | 500 |
| Oct. 7, 1968 | Albert E. Barrett ......................... | 1,000 | | 1,000 |
| Oct. 7, 1968 | George Tindall ............................. | 100 | | 100 |
| Oct. 7, 1968 | Parsons, Brinckerhoff, Quade & Douglass, Engineers ........ | 400 | $400 | |
| Oct. 7, 1968 | Michael Bradley ........................... | 200 | 200 | |
| Oct. 7, 1968 | Shelly Acuff .............................. | 800 | | 800 |
| Oct. 7, 1968 | Joseph Leto ................................ | 100 | | 100 |
| Nov. 12, 1968 | Committeeman David Goodwin ........ | 100 | | 100 |
| July 14, 1969 | Gill Frazier, Scheideler Equipment Co., Inc ...................... | 200 | | 200 |
| July 21, 1969 | Philip Scuteri ............................. | 1,000 | 1,000 | |
| Aug. 2, 1969 | Colonial Garage, Inc ...................... | 1,500 | | 1,500 |
| Aug. 3, 1969 | Mayor David Goodwin ................... | (No amount noted) | | |
| Aug. 3, 1969 | Shelly Acuff .............................. | 400 | | 400 |
| Dec. 3, 1969 | Patterson Chevrolet ...................... | (No amount noted) | | |
| May 26, 1970 | Barrett Paving Co., Inc ................. | 300 | | 300 |
| June 3, 1970 | Committeeman David Goodwin by N.J. Equipment Co ................. | 500 | | 500 |

| June 5, 1970 | Fred F. Morelli ............................ | (No amount noted) | |
| June 16, 1970 | Barrett Paving Co., Inc ................. | 300 | 300 |
| June 25, 1970 | Anonymous ................................. | 1,000 | 1,000 |
| Aug. 10, 1970 | Colonial Garage, Inc ..................... | (No amount noted) | |
| Nov. 23, 1970 | Barrett Paving Co., Inc ................. | (No amount noted) | |
| Totals | ..................................................... | 9,125 | 1,600 | 7,525 |

. During the years before the Court, deposits were made to a checking account of the Democratic Club as indicated in table IV:

TABLE IV

| Year | Number of deposits | Total cash | Total checks | Form not indicated |
|---|---|---|---|---|
| 1968 | 25 | $11,501.00 | $22,263.21 | $427.66 |
| 1969 | 31 | 11,060.65 | 22,448.45 | 0 |
| 1970 | 41 | 9,100.00 | 23,613.17 | 625.00 |
| Totals | 97 | 31,661.65 | 68,324.83 | 1,052.66 |

On August 1, 1969, petitioner deposited $2,240 in cash in his savings account at First National Bank of Bordertown, Bordertown, N.J.

On June 22, 1970, petitioner repaid $1,000 in cash against a loan he had with the United Savings & Loan Association.

Petitioner and his wife, Eva H. Goodwin, filed a joint Federal income tax return for 1968. On this return, petitioner showed his occupation as Chief Bureau Recreation and his employer as the State of New Jersey, Trenton, N.J. His wife's occupation was shown as housewife. On this return, petitioner reported total income of $18,747.68 consisting of $18,664.42 of wages or salaries and $83.26 of other income, which was composed of $30.46 of interest and $52.80 for sale or exchange of property. Itemized deductions totaling $2,533.41 were claimed. The claimed deductions were composed of medical expense; charitable contributions; real estate, State and local gasoline, and general sales taxes; interest expense composed of interest on a home mortgage, interest paid to a bank, and interest paid to a credit union; and miscellaneous deductions including expenses of attending an American Legion convention, automobile expense based on miles driven as State Director, American Legion Baseball, and professional dues. No other deductions were claimed.

Petitioner and his wife filed a joint Federal income tax return for the calendar year 1969 in which petitioner's occupation was

shown as "Chief, Department Recreation State, Mayor, Hamilton Township." His wife's occupation was shown as "housewife." On this return, salaries and wages of $20,360.48 were reported and other income of $650, which consisted of gain on the sale of a capital asset, making total reported income of $21,010.48. From this reported income was deducted as adjustments the amount of $1,820. These adjustments consisted of unreimbursed automobile expense in connection with being on the township committee and mayor of the township of $940 and a sick pay exclusion of $880. On his 1969 return, petitioner claimed itemized deductions of $2,798.19, again consisting of medical expenses, taxes, charitable contributions, and miscellaneous expenses in connection with sponsorship of a team, convention expenses, and also in this year an amount under "League of Municipalities."

Petitioner and his wife filed a joint Federal income tax return for the calendar year 1970. Petitioner's occupation on this return was shown as "Chief, Recreation Department State," and his wife's occupation as "housewife." He reported salaries and wages of $21,780.32 and interest income of $345.18, for a total of $22,125.50, from which was subtracted an adjustment representing transportation expenses of $600 (computed as $1,200 on automobile mileage driven, less $600 reimbursement), leaving adjusted gross income of $21,525.50. On this return, petitioner claimed itemized deductions of $2,511.08, again consisting of medical expenses, taxes, charitable contributions, interest expense, and miscellaneous expenses composed of American Legion delegate expenses and professional dues.

For each of the years 1969 and 1970, the income from salaries and wages reported by petitioner on his return totals the amount shown on the Form W–2 petitioner received from the State of New Jersey plus the amount shown on the Form W–2 petitioner received from the Township of Hamilton, N.J.[3]

Petitioner did not receive unreported income with respect to the following items listed in table II:

---

[3]No Form W–2's for the year 1968 are in the record.

*1968*

May 5       W. E. Timmerman Co  ............    $750
Nov. 27     Barrett Paving Co., Inc  ..........   1,050
Dec. 17     Barrett Paving Co., Inc  ..........     500

*1969*
Nov. 3      Barrett Paving Co., Inc  ..........   1,000

*1970*
June 19     Lynn Equipment Co., Inc  ........    1,500
Nov. 25     Barrett Paving Co., Inc  ..........     800

OPINION

Respondent takes the position that petitioner is estopped by reason of his conviction on a plea of guilty of violation of section 7206(1) for each of the years 1968, 1969, and 1970 from denying that his return for each of these years was false and fraudulent in that he knew and believed that his correct total income for each of these years was an amount substantially in excess of the income reported on his return for the year.

Respondent argues, based on the decisions in *Arctic Ice Cream Co. v. Commissioner,* 43 T.C. 68 (1964), and *Plunkett v. Commissioner,* 465 F.2d 299 (7th Cir. 1972), affg. a Memorandum Opinion of this Court, that for the purposes of applying the doctrine of collateral estoppel there is no difference between a conviction based upon a plea of guilty and a conviction entered after a trial on the merits. Both of these cases specifically so hold and we follow the holdings of those cases in the instant case.

In support of his position that because of his conviction petitioner is estopped to deny that his return for each of the years 1968, 1969, and 1970 is fraudulent and to deny that he omitted substantial amounts of income from his return in each of those years, respondent relies on *Considine v. Commissioner,* 68 T.C. 52 (1977).

In the *Considine* case, we held that the taxpayer was estopped by his conviction after a jury trial of violating section 7206(1) from denying that his return for the year there involved was fraudulent in that it failed to report a specific item of capital gain income. We pointed out that estoppel applies only with respect to those facts actually litigated in the first case which were essential to the judgment in that case. In the instant case, therefore, we must decide what facts were litigated and

essential to the judgment in the criminal case since the conviction was on a guilty plea.

In *Arctic Ice Cream Co. v. Commissioner, supra,* we stated (p. 75): "It is well settled that a plea of guilty means 'guilty as charged in the indictment,' and that such a plea is a conclusive judicial admission of all of the essential elements of the offense which the indictment charges." The essential element of the indictment in the instant case, to which petitioner pleaded guilty, was that in each of the years here in issue, he subscribed under penalties of perjury a joint Federal income tax return which was filed with the Internal Revenue Service, which return he did not believe to be true and correct in that he well knew and believed that his correct total income for the year was substantially in excess of the income he reported.

The indictment for violation of section 7206(1)[4] in the instant case to which petitioner pleaded guilty, as was the indictment in *Considine v. Commissioner, supra,* was for willfully subscribing under penalties of perjury a Federal income tax return known or believed to be incorrect in that income was omitted therefrom.[5] It was essential to petitioner's conviction that it be shown that he willfully subscribed to a return which he knew and believed to be false in that income was omitted therefrom. As discussed in the *Considine* case, the willful subscribing to a false return is the filing of a fraudulent return. In fact, the judgment here convicted petitioner of filing "false and fraudulent income tax returns." In our view, here, as in *Considine,* petitioner is estopped to deny that his return for each of the years here in issue was false and fraudulent and that he omitted substantial amounts of income from his return in each of these years.

Petitioner argues that the should not be collaterally estopped from denying the charges in the indictment to which he pleaded guilty because—

I was advised at the time of these allegations to plead guilty by my attorney to

---

[4]SEC. 7206. FRAUD AND FALSE STATEMENTS.
Any person who—
(1) DECLARATION UNDER PENALTIES OF PERJURY.—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; or .

[5]We are not here concerned with whether, and if so, to what extent, collateral estoppel would apply where a conviction for violation of sec. 7206(1) was based on a charge of falsely subscribing under penalties of perjury to a statement or document other than a Federal income tax return.

the income tax charges and all other charges would be dropped, which they were. I was told by my attorney at that time that if I pleaded guilty nothing would happen. They would realize that this money did go to the Harry Lieberman Democratic Club, and my pension would be safe. This turned out to be a false statement. I was fined $2,000 in Federal Court, which has since been paid. I was placed on two years probation, which has been served, and my pension has been taken away from me * * *

With respect to a similar contention made by a taxpayer in *Plunkett v. Commissioner, supra,* the court stated as follows (pp. 306–307):

We concur in the opinion of the court below that

"[t]he stated understanding of counsel, that the government would move to dismiss charges against Mrs. Plunkett if petitioner would plead guilty to the charges against him, does not vitiate petitioner's otherwise voluntary plea of guilty where the agreement was fully performed in conformity with the petitioner's expectations. Petitioner did not misunderstand the terms or the immediate consequences of the agreement and his plea of guilty. Hence, the existence of the agreement does not affect the voluntariness of his plea." 29 CCH Tax Ct.Mem. at 1247.

*       *       *       *       *       *       *

Plunkett also complains that the judge who accepted his guilty plea was not informed of any evidentiary foundation to support the criminal charge. Consequently, the provision of Rule 11 of the Federal Rules of Criminal Procedure that "[t]he court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea" was allegedly violated.

*       *       *       *       *       *       *

The alleged defect in the proceedings against Plunkett was not of constitutional dimensions. The petitioner took no appeal directly attacking his conviction or sentence, and he has paid the fine imposed upon him. In light of these circumstances and the restrictions placed on *McCarthy* by *Halliday,* we can see no justification for sustaining Plunkett's collateral attack on the conviction and for voiding the consequences of that conviction in the present case.

In the instant case, petitioner makes no contention that any representations of any type were made to him by any representative of the Government or by the Court. He refers to advice to him by his own attorney which "turned out to be a false statement." He has made no showing that he was not fully apprised by the Court of the consequences of his plea of guilty. The judgment in this case recites that the Court is "satisfied that there is a factual basis for the plea" of guilty. No showing has been made that this finding in the judgment is not based on

questions propounded to petitioner or adequate facts otherwise ascertained by the District Court judge before entry of the judgment. We, therefore, conclude here, as did the court in *Plunkett v. Commissioner, supra,* that no justification exists for sustaining a collateral attack on petitioner's conviction on a plea of guilty.

In order for collateral estoppel to apply with respect to the issue raised under section 6653(b), it must be shown as stated in *Considine v. Commissioner, supra* at 64, that the facts to which the estoppel applies are "ultimate facts with respect to which an identical issue is presented under section 6653(b)." As stated in *Sunnen v. Commissioner,* 333 U.S. 591, 599–600 (1948), where a question of fact essential to the judgment in the first case is actually litigated and determined in that proceeding, the parties are bound by the determination in a subsequent proceeding even though the cause of action is different. In order for the judgment in the prior proceeding to be given conclusive effect, it must establish "one of the ultimate facts in issue in the subsequent proceeding." *Yates v. United States,* 354 U.S. 298, 338 (1957); *The Evergreens v. Nunan,* 141 F.2d 927–928, 931 (2d Cir. 1944), affg. 47 B.T.A. 815 (1942), cert. denied 323 U.S. 720 (1944). In *The Evergreens v. Nunan, supra* at 928, the term ultimate fact in the collateral estoppel context is defined as "one of those facts, upon whose combined occurrence the law raises the duty, or the right, in question." Such an ultimate fact is distinguished in that case from an evidentiary fact, "from whose existence may be rationally inferred the existence of one of the facts upon whose combined occurrence the law raises the duty, or the right."[6]

A conclusion that a taxpayer has filed a false and fraudulent return from which substantial income is omitted is a finding of an ultimate fact. This is one of the ultimate facts required to be shown in order to sustain an addition to tax under section 6653(b), even though it is necessary under that section, in order to find the addition to tax to be due, to make a further ultimate

---

[6] One of its definitions of ultimate facts in Black's Law Dictionary 1691, 1692 (4th ed. 1968 rev.) is the following:

"Those facts found in that vaguely defined field lying between evidential facts on the one side and the primary issue or conclusion of law on the other, being but the logical results of the proofs, or, in other words, mere conclusions of fact. Christmas v. Cowden, 44 N.M. 517, 105 P.2d 484, 487."

finding of fact that there is an underpayment of tax due to the fraudulent omission of income from the return.[7] While section 6653(b) does not include the phrase "with intent to evade tax" as did section 293(b), I.R.C. 1939, this difference in wording was not a change in the proof necessary to show that a taxpayer is liable for an addition to tax for fraud. If an underpayment of tax is due to fraud, it is this fraud which comprises the intent to evade tax. See *McGee v. Commissioner*, 61 T.C. 249, 257 (1973); *Plunkett v. Commissioner, supra* at 303. Therefore, to find the further ultimate fact that an underpayment of tax results from the fraudulent omission of income from the return is to find that the underpayment is due to fraud with intent to evade tax.

While, as heretofore pointed out, an "ultimate fact" is defined in *The Evergreens v. Nunan, supra* at 928, for purposes of collateral estoppel as one of the facts "upon whose combined occurrence the law raises the duty, or the right, in question," we have found no case specifically discussing what is an "ultimate fact" in a case involving an addition to tax under section 6653(b), other than the *Considine* case, the *Amos* case, and cases similar to the *Amos* case. We have therefore analyzed cases applying collateral estoppel in other situations to determine the nature of the facts considered in those cases to be ultimate facts in relation to the issues involved in those cases. From this analysis, we can compare the facts in those cases to which collateral estoppel was held to apply in relation to the issues therein to the fact of fraudulent omission of income from a Federal tax return to the issue of whether there is an underpayment of tax, a part of which is due to fraud.

In *Local 167 v. United States*, 291 U.S. 293 (1934), the Court held Local 167 to be estopped by a prior criminal conviction involving 1929 and prior years from denying that it engaged in a conspiracy prior to 1929. In that case, the issue to be determined was whether petitioner was engaged in a conspiracy in 1930 and should be enjoined from so engaging. The Supreme Court stated in this respect (pp. 298–299):

---

[7] In the case of *Considine v. Commissioner*, 68 T.C. 52, 59 (1977), we discussed at some length the fact that willful, as used in sec. 7206(1) and sec. 7201, has the same meaning and that the bad faith or evil intent referred to in cases discussing the meaning of the word, willful, in the context of these statutes "simply means a voluntary, intentional violation of a known legal duty." See *United States v. Pomponio*, 429 U.S. 10, 12 (1976). See also *Amos v. Commissioner*, 43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965).

The judgment in the criminal case conclusively established in favor of the United States and against those who were found guilty that within the period covered by the indictment the latter were parties to the conspiracy charged. The complaint in this suit includes the allegations on which that prosecution was based. The defendants in this suit who had been there convicted could not require proof of what had been duly adjudged between the parties. And, to the extent that the answers attempted to deny participation of convicted defendants in the conspiracy of which they had been found guilty, they are false and sham and the district court rightly so treated them. *Oklahoma v. Texas*, 256 U.S. 70, 85. Cf. *Coffey v. United States*, 116 U.S. 436, 442. *Stone v. United States*, 167 U.S. 178, 184.

Following the above-quoted holding, the Court discussed the evidence with respect to the existence of a conspiracy for the period following the period to which the prior conviction related, which was the issue in the case.

*Local 167 v. United States, supra,* was one of the cases relied on in *Tomlinson v. Lefkowitz,* 334 F.2d 262 (5th Cir. 1964), cert. denied 379 U.S. 962 (1965), for the holding that a conviction of a taxpayer under section 7201 estopped him from denying his liability for the addition to tax for fraud under section 6653(b).

In *Thomas v. United States,* 314 F.2d 936 (5th Cir. 1963), remanding a Memorandum Opinion of this Court, the Government was held collaterally estopped by a prior District Court decision involving the taxpayer's liability for income taxes in 1955 to deny that a farm was operated for a profit in 1955. The issue involved in the second case was whether the farm was operated for profit in the years 1956 through 1958.

In *Pena-Cabanillas v. United States,* 394 F.2d 785 (9th Cir. 1968), it was held in a case involving an indictment of a person for illegally reentering the United States after having been deported that the person was estopped by a prior conviction to deny that he was an alien as of the date of the prior conviction. It was specifically pointed out that evidence was proper with respect to whether his reentry into the United States was legal and his status at the date of that reentry.

In *Gemma v. Commissioner,* 46 T.C. 821, 834 (1966), we held in a case involving the addition to tax for fraud under section 6653(b), but not involving an issue as to the statute of limitations, that the taxpayer was estopped by entry of a plea of guilty to a charge of willful failure to file an income tax return for the year 1956 to deny that his failure to file a return for that year was willful.

The case of *United States v. Fabric Garment Co.*, 366 F.2d 530 (2d Cir. 1966), discussed at some length in *Considine v. Commissioner, supra* at 64–65, held collateral estoppel to apply in a civil action from a conviction in a prior criminal case in circumstances quite comparable to those here involved. In the *Fabric Garment* case, the issue involved a claim for conversion of goods. In the prior case, Fabric Garment had been convicted of unlawfully disposing of goods made under contract for the Government and making false statements as to the disposition of the goods. The Court held Fabric Garment to be collaterally estopped to deny that it unlawfully disposed of wool serge, but not as to the amount disposed of. See also *Monjar v. Commissioner*, 13 T.C. 587, 617 (1949).

From these cases, it is clear that uniformly courts have held that a fact which by its nature is an ultimate fact, such as the omission of substantial income from a false and fraudulent return which has been decided in a prior case, collaterally estops the person involved in the prior case from denying in a later action that ultimate fact, even though other facts must be found to dispose of the issue involved in the second case. In our view, petitioner in this case is estopped by his conviction in the prior criminal case from denying that he filed a fraudulent Federal income tax return from which was omitted substantial income for each of the years here involved.

Having concluded that petitioner is estopped to deny that his returns for the years here in issue were false and fraudulent in that he knowingly failed to report substantial income, it is necessary for us to decide whether respondent has shown by clear and convincing evidence that a part of the underpayment of tax in each of these years was due to this fraud with intent to evade tax. It is not necessary to a conviction under section 7206(1) that the false statement or omission on the return result in an underpayment of tax. See *United States v. Rayor*, 204 F. Supp. 486 (S.D. Cal. 1962). However, a necessary part of the showing of an addition to tax under section 6653(b) is that there is an underpayment due to fraud.

The record here contains petitioner's tax returns showing all the deductions claimed by petitioner. None of the deductions claimed by petitioner on these returns has been disallowed by respondent. Petitioner's returns, therefore, constitute a statement of petitioner as to the deductions to which he is entitled in

each of the years here in issue. This is clear evidence of petitioner's deductions. Petitioner's only business in the years here in issue was that of being an employee, a State employee and a township committeeman and mayor. The only deductible business expenses petitioner could have from his employment were employee business expenses. Petitioner produced no evidence and made no claim that he was entitled to any deductions other than those claimed on his return. From petitioner's returns, respondent has shown the amount of his deductible expenses in each year here in issue.

Petitioner does claim that he turned over all the money which he received in cash from suppliers of goods and services to Hamilton Township to the treasurer of the Democratic Club, Mr. Glogoff.[8] Petitioner claims that he collected the money only as the agent of the Democratic Club and that he in fact turned the money over to the club treasurer. If petitioner had in fact collected the money merely as an agent for the Democratic Club, he would have received no income from such collection. However, in this case, petitioner is estopped to deny that he received unreported income. As we pointed out in *Diamond v. Commissioner*, 56 T.C. 530, 541 (1971), amounts received by a taxpayer who acts merely as a conduit for the funds are not required to be included in the recipient's income. See also *Florists' Transworld Delivery Assn. v. Commissioner*, 67 T.C. 333 (1976). Where a person collects funds with no claim of right to such funds but collects such funds merely as agent, the funds do not constitute income to him. The fact that all such funds collected by a person are promptly transmitted to another is indicative that the person collecting the funds has no claim or right to the funds. *Lashells' Estate v. Commissioner*, 208 F.2d 430 (6th Cir. 1953).[9] In this case, respondent has recognized that petitioner had no claim of right to the part of the cash paid to him by persons supplying goods and services to Hamilton Township which he did, in fact, turn over to the treasurer of the Democratic Club. Respondent, in his computation, eliminated such amounts from the amounts includable in petitioner's income. The special agent testified that the exhibit showing the computation of this elimination of the

---

[8]At the time of the trial, Mr. Glogoff was deceased.

[9]In *Pierson v. Commissioner*, T.C. Memo. 1976–281, involving the question of "whether certain payments received" by the taxpayer and "remitted by him to a member of the Yorty Administration" should be included in his income, we held that they should not be so included.

funds paid over to the Democratic Club was based on an exhibit prepared for the criminal trial. To the extent petitioner was only a conduit of funds collected by him to the Democratic Club, such funds were not income to petitioner. Since funds collected by petitioner as agent for the Democratic Club and turned over to that club are not income to petitioner, the amounts so turned over are not deductions.

Clearly, amounts received by a taxpayer as "kickbacks" under a claim of right are income to that taxpayer. *Lydon v. Commissioner*, 351 F.2d 539 (7th Cir. 1965), affg. a Memorandum Opinion of this Court; *Cain v. Commissioner*, 460 F.2d 1243 (5th Cir. 1972), affg. a Memorandum Opinion of this Court.

On the basis of this record as a whole, we conclude that respondent has shown by clear and convincing evidence that part of the underpayment in tax in each of the years here in issue was due to petitioner's failure to report substantial amounts of income on his false and fraudulent returns. In our opinion, this is sufficient to show that part of the underpayment of tax by petitioner in each year here in issue was due to fraud with intent to evade tax.

However, there are other indications of fraud in this record. Petitioner received the payments from the suppliers of goods and services to Hamilton Township in cash. Petitioner testified under oath that "every penny that was ever given to me was never solicited" whereas we have found on the testimony of a number of other witnesses in this case that petitioner did solicit funds from suppliers of goods and services to Hamilton Township. There is a cash deposit to petitioner's savings account in approximately the amount and at approximately the time of one of the cash payments he received from a supplier to Hamilton Township. On the basis of this record as a whole, we conclude that petitioner is collaterally estopped to deny that he filed fraudulent returns which substantially understated his income for each of the years here in issue and that respondent has shown by clear and convincing evidence that an underpayment of tax resulted from these understatements of income, a part of which was due to fraud.

## Understatement of Income

Respondent asserts that petitioner received unreported income in the form of kickbacks from companies doing business

with Hamilton Township in the amounts listed in table II. Petitioner contends that any moneys received by him from vendors, such as those listed in table II, in their dealings with Hamilton Township, were "campaign contributions" to the Democratic Club and were turned over to the treasurer of that organization. In other words, petitioner contends he was merely a conduit or agent for any funds given to the Democratic Club and as such, he is not taxable on these payments.

We conclude that petitioner did not receive unreported income as to six of the asserted payments (as set forth in the findings of fact, *supra*); as to the other payments, we conclude that petitioner has failed to meet his burden of proving error in respondent's determination.

In analyzing whether the various payments listed by respondent constitute taxable income to petitioner, we first note that the burden of proof is on petitioner because the statutory notice is presumptively correct. Rule 142(a), Tax Court Rules of Practice and Procedure; *Welch v. Helvering*, 290 U.S. 111 (1933).

The question, as to each of the asserted payments, is whether petitioner has carried his burden of proving that the asserted payment does not represent income taxable to him.

*North Jersey Equipment Co., Inc.*—The record includes credible testimony that petitioner received the asserted payments from North Jersey Equipment Co., Inc., in 1968 and 1970. Petitioner has not persuaded us that respondent's determinations are incorrect. As to these payments, we hold for respondent.

*W. E. Timmerman Co.*—Respondent's witness testified that, after selling a street sweeper to Hamilton Township on behalf of W. E. Timmerman Co., he gave petitioner cash in an amount equal to about 5 percent of the price the township paid for the sweeper. This testimony corroborates respondent's determination that petitioner received $750 on May 5, 1968, from W. E. Timmerman Co. However, the witness also testified that he received a "thank you" letter from the treasurer of the Democratic Club. That letter is in evidence; it is dated May 6, 1968; it thanks the witness for his "generous contribution" to the Democratic Club's Campaign Committee; it does not indicate the amount the contribution. On May 17, 1968, $1,010 in bills was deposited to the checking account of the Democratic Club's Campaign Committee.

On the basis of this evidence and petitioner's testimony, we hold for petitioner as to the asserted $750 payment by W. E. Timmerman Co. in 1968.

*Barrett Paving Co., Inc.*—Respondent's witness testified that all the Barrett Paving Co., Inc., payments to petitioner were made during summer and early fall. This testimony conflicts in part with respondent's determinations set forth in table II, *supra*. Respondent presented no other credible evidence as to the Barrett payments. On the basis of respondent's evidence and petitioner's testimony, we hold for petitioner as to the following asserted Barrett payments:

| 1968 | Nov. 27 | $1,050 |
|------|---------|--------|
|      | Dec. 17 | 500 |
| 1969 | Nov. 3 | 1,000 |
| 1970 | Nov. 25 | 800 |

Petitioner has not persuaded us that respondent's determinations as to the remaining Barrett payments are incorrect and so we hold for respondent as to the remaining Barrett payments.

*Colonial Garage, Inc.*—The record includes credible testimony that petitioner received the asserted payments from Colonial Garage, Inc., in 1969 and 1970. Petitioner has not persuaded us that respondent's determinations are incorrect. As to these payments, we hold for respondent.

*Lynn Equipment Co., Inc.*—As to the asserted $1,500 payment by Lynn Equipment Co., Inc., in 1970, respondent presented the testimony of an Internal Revenue Service employee who stated that a Mr. Hobart Poole had told him that he had cashed a check (for $3,737.50) from Lynn Equipment Co., Inc., "and gave a portion of this check to Mr. Goodwin." (Transcript, p. 50.) Just before this statement, respondent's counsel had been put on notice about the essentially hearsay nature of other testimony of this witness, as follows:

THE COURT: * * * Now, the petitioner has not objected to them, and I am going to admit them. But unless they are corroborated or some other special circumstances are shown, I will not give any weight to that type of hearsay testimony.

MR. KEARNEY: Your Honor, we will call a witness with respect to the transactions. Mr. Rush's testimony was directed more to the manner in which he arrived at the payment bases that were contained in the notice of deficiency

and in the scope of the other information was necessary with that regard, Your Honor.

THE COURT: Very well.

MR. KEARNEY: I appreciate the hearsay nature of it, Your Honor. No,—

THE COURT: So long as you understand the situation.

MR. KEARNEY: Your Honor, we will call a witness with respect to each of the payments.

THE COURT: Fine

MR. KEARNEY: With respect to Lynn Equipment Company, Mr. Rush, how did you arrive at the adjustment that was made for Lynn Equipment? [Transcript, p. 49.]

The testimony as to the asserted Lynn Equipment Co., Inc., payment was given in response to the quoted question by respondent's counsel. Respondent presented no other evidence on this point. Cf. *Cain v. Commissioner, supra.*

As to this asserted payment, the Court credits petitioner's denials. (Transcript, pp. 15–22.) We hold for petitioner as to the asserted $1,500 payment by Lynn Equipment Co., Inc., in 1970.

Respondent, by amendment to answer, claimed an increased addition to tax under section 6653(b) for the year 1969, stating that in the notice of deficiency, the addition to tax was computed on the basis of the amended return and not on the original return. The addition to tax for fraud under section 6653(b) is to be applied to the difference between the correct tax due and the tax shown on a taxpayer's timely filed return. *Stewart v. Commissioner,* 66 T.C. 54 (1976); *Breman v. Commissioner,* 66 T.C. 61 (1976). A copy of the amended return was not placed in evidence. However, the parties stipulated that petitioner and his wife filed a timely return for 1969, a copy of which was attached to the stipulation. Since amended returns are not the statutory return, although recognized for certain purposes by respondent's regulations (see *Koch v. Alexander,* 561 F.2d 1115 (4th Cir. 1977)), we accept this stipulation as to the 1969 return as referring to the statutory timely filed return. Therefore, the addition to tax under section 6653(b) should be computed on the basis of the difference in petitioner's tax computed in accordance with this opinion and the tax shown on petitioner's return which has been stipulated in this case.

To reflect the conclusions reached herein,[10]

*Decision will be entered under Rule 155.*

Reviewed by the Court.

FEATHERSTON, *J.*, dissenting: I disagree with that portion of the majority opinion which estops petitioner from showing that he did not file a fraudulent return for each of the years in controversy. Estopping petitioner in this respect, in my opinion, has led the majority to apply an erroneous standard in finding that some part of the deficiency for the years in issue was "due to fraud" within the meaning of Code section 6653(b).

As I understand the teaching of the Supreme Court in *Commissioner v. Sunnen*, 333 U.S. 591, 599–600 (1948), and the numerous cases which have followed it, application of the principle of collateral estoppel "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." In *Cromwell v. County of Sac*, 94 U.S. 351, 353 (1876), a case upon which *Sunnen* relied heavily, the Supreme Court explained that when applying collateral estoppel "the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." See also Restatement, Judgments, sec. 68(a) (1942).

Due to petitioner's conviction under section 7206(1), the majority has estopped petitioner "from denying that he filed a fraudulent Federal income tax return from which was omitted substantial income for each of the years here involved." The effect of the majority opinion is to equate the willful filing of a return containing a false statement with the commission of fraud with intent to evade tax. On this ground, it has limited respondent's burden of proof to a showing "that a part of the

---

[10]Although the deficiency notice was sent to both petitioner and his wife, Mrs. Goodwin did not file a petition with the Court. Respondent's counsel assured the Court that respondent intended to abate the assessment made against Mrs. Goodwin to the extent, if any, that the Court redetermines the deficiency against petitioner.

underpayment of tax * * * was due to this fraud with intent to evade tax." Estopping petitioner from denying that his returns were fraudulent is error, because the existence of fraud in petitioner's returns was not alleged, litigated, or decided in the prior criminal case.

Section 7206(1)[1] makes it a crime for one to willfully make and submit any return which is verified by a written declaration that it is made under the penalties of perjury and which he does not believe to be true and correct as to every material matter. The "intent to evade taxes is not an element of the crime charged under this section," i.e., section 7206(1). *Siravo v. United States*, 377 F.2d 469, 472 n. 4 (1st Cir. 1967). Rather, the purpose behind section 7206(1) is to punish falsification in tax returns even absent fraud or, indeed, the existence of a deficiency.

Sustaining the conviction of a taxpayer who was charged with having falsified in his return the source of his income, the court in *United States v. DiVarco*, 484 F.2d 670, 673 (7th Cir. 1973), cert. denied 415 U.S. 916 (1974), noted "the need for accurate information concerning the source of income so that the Internal Revenue Service can police and verify the reporting of individuals and corporations." The court thus concluded that "a misstatement as to the source of income is a material matter," within the meaning of section 7206(1). The following statement by the trial court (343 F. Supp. 101, 103 (N.D. Ill. 1972)) was quoted with approval (484 F.2d at 673):

One of the more basic tenets running through all the cases is that the purpose behind the statute [sec. 7206(1)] is to prosecute those who intentionally falsify their tax returns *regardless of the precise ultimate effect that such falsification may have*. [Emphasis added.]

Other courts have agreed that section 7206(1) "impose[s] the penalties for perjury upon those who wilfully falsify their returns regardless of the tax consequences of the falsehood."

---

[1]SEC. 7206. FRAUD AND FALSE STATEMENTS.

Any person who—

(1) DECLARATION UNDER PENALTIES OF PERJURY.—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * *

* * * * * * *

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

*Gaunt v. United States*, 184 F.2d 284, 288 (1st Cir. 1950), cert. denied 340 U.S. 917 (1951); cf. *Silverstein v. United States*, 377 F.2d 269, 270 (1st Cir. 1967). Indeed, proof that the falsification resulted in no tax deficiency is "not relevant to the issue raised" by an indictment under section 7206(1). *Schepps v. United States*, 395 F.2d 749 (5th Cir. 1968), cert. denied 393 U.S. 925 (1968); cf. *Hoover v. United States*, 358 F.2d 87, 88–89 (5th Cir. 1966), cert. denied 385 U.S. 822 (1966).

Here, the indictment under section 7206(1) charges that petitioner willfully filed a verified return which "he did not believe to be true and correct as to every material matter" in that petitioner "well knew and believed * * * [that his] correct total income * * * [was] substantially in excess of the" amount reported. To this charge for 1968, 1969, and 1970, petitioner pleaded guilty. Because petitioner's crime under section 7206(1) was completed with the knowing omission of income, conviction was proper in his case even if petitioner, when filing his returns, thought he had deductions to offset the omissions, and in making the omissions, had no intent to defraud the Government of its lawful taxes but rather was attempting merely to conceal the kickbacks he had taken. Therefore, to borrow the words of *Cromwell v. County of Sac*, 94 U.S. at 353, the question of fraud was not "actually litigated and determined" in the criminal action. Hence, petitioner should not be estopped from denying in the instant case that the underpayment of tax was due to fraud.

I think the majority's error in applying collateral estoppel in this context stems from the premise that "the willful subscribing to a false return [i.e., a return containing a false statement] is the filing of a fraudulent return." This premise, which is essential to the majority's position, was stated in *Considine v. Commissioner*, 68 T.C. 52, 61 (1977). In that case, at page 59, the Commissioner pointed to the following statement in *Amos v. Commissioner*, 43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965): "The term 'willfully' as used in section 7201 has authoritatively been defined in prior judicial decisions to encompass all of the elements of fraud which are envisioned by the civil penalty described in section 6653(b)." The Commissioner also emphasized that, in *United States v. Bishop*, 412 U.S. 346 (1973), and in *United States v. Pomponio*, 429 U.S. 10 (1976), the Supreme Court construed the word "willfully" to bear the same meaning in each of sections 7201, 7202, 7203, 7204, 7205, and 7206.

Adopting the Commissioner's argument, the Court concluded in *Considine v. Commissioner, supra* at 61, 68, that conviction under section 7206(1) constitutes "proof that the return is fraudulent" and that collateral estoppel prevents a petitioner convicted under section 7206(1) from denying that any underpayment for the same year was due to fraud; respondent's burden was limited to showing that there was an underpayment of tax.

I think the *Considine* opinion erroneously reads the element of fraud into the word "willfully" contained in section 7206(1). As the majority here correctly states, "willfully" as used in section 7206(1) means " a voluntary, intentional violation of a known legal duty." *United States v. Pomponio, supra* at 12; *United States v. Bishop, supra* at 360. This definition says nothing about fraud. The *Bishop* court buttressed its conclusion that "willfully" has the foregoing uniform meaning in sections 7201–7207 by noting ways in which those statutes differ, one from the other, specifically in "the designation of certain express elements of the offenses." *United States v. Bishop, supra* at 358–360. For example, the Court, at page 359, described the express element of the offense under section 7201 as the "attempt to evade." In the following statement, the Court explicitly cautioned against interpreting the word "willfully," as used in sections 7201–7207, to include the section 7201 requirement of "an attempt to evade" (412 U.S. at 360 n. 8):

Semantic confusion sometimes has been created when courts discuss the express requirement of an "attempt to evade" in section 7201 as if it were implicit in the word "willfully" in that statute. * * * This Court may be somewhat responsible for this imprecision because a similar analysis was employed in *Spies v. United States*, 317 U.S. 492, 497–499, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943). Greater clarity might well result from an analysis that distinguishes the express elements, such as an "attempt to evade," prescribed by section 7201, from the uniform requirement of willfulness.

The language quoted above from the *Amos* opinion was used in the context of a discussion of the similarity of section 7201 ("willfully attempts * * * to evade * * * tax") and section 6653(b) ("underpayment * * * due to fraud"). The element of fraud necessary for conviction under section 7201 was equated with that essential for the imposition of the civil penalty under section 6653(b). It is the attempt to evade tax which is tantamount to fraud. "The real character of the offense lies

* * * in the attempt to defraud the government by evading the tax." *Gariepy v. United States,* 220 F.2d 252, 259 (6th Cir. 1955), cert. denied 350 U.S. 825 (1955). Thus, it is correct to conclude, as we did in *Amos,* that a taxpayer's conviction under section 7201 of having attempted to evade or defeat a tax for a taxable year estops that taxpayer from denying under section 6653(b) that part of his underpayment for the same year was "due to fraud." See, e.g., *Tomlinson v. Lefkowitz,* 334 F.2d 262 (5th Cir. 1964), cert. denied 379 U.S. 962 (1965); *Moore v. United States,* 360 F.2d 353, 355 (4th Cir. 1966), cert. denied 385 U.S. 1001 (1967).

However, in my opinion, to hold that a conviction of "willfully" making a false statement in an income tax return within the meaning of section 7206(1) estops a taxpayer from denying that any underpayment of tax he may have made for the year of the return was "due to fraud" misapplies the principle of collateral estoppel. Conviction under section 7206(1) establishes that petitioner willfully, or voluntarily and intentionally, violated the legal duty *not* to make a false statement as to any material matter on his income tax return. It does not establish that he violated that duty with an intent, or in an attempt, to evade tax.

I am aware that the finding and judgment entered by the District Court states: "Defendant has been convicted as charged of the offense(s) of filing false and fraudulent income tax returns. 26:7206(1)." But, in entering this minute order, the court simply paraphrased the heading of section 7206, "Fraud and False Statements." Paragraphs (2), (3), and (4) of section 7206 describe crimes involving fraud, but, as explained above, section 7206(1) does not.

While I disagree with the majority position that petitioner is estopped from denying fraud, I think petitioner is estopped to deny the question actually litigated and determined in the criminal action—in the words of the indictment, that he—

wilfully and knowingly * * * [filed an income tax return for each of the 3 years for which he was convicted which] he did not believe to be true and correct as to every material matter, in that * * * he then and there well knew and believed * * * the correct total income for the period reported was an amount substantially in excess of the reported total sum [in each such year].

Because "a fact decided in an earlier suit is conclusively established between the parties and their privies, provided it was necessary to the result of the first suit" (*Hyman v. Regenstein,* 258 F.2d 502, 510 (5th Cir. 1958); *The Evergreens v. Nunan,* 141

F.2d 927, 928 (2d Cir. 1944), cert. denied 323 U.S. 720 (1944); *Fox v. Commissioner*, 61 T.C. 704, 711 (1974)), petitioner is not entitled to relitigate the issue as to these omissions in the instant case.

In resolving the issue of whether any part of petitioner's underpayments of tax were "due to fraud," it will be important to weigh his failure to show he had deductions to offset these judicially-established omissions of income. See, e.g., *United States v. Bender*, 218 F.2d 869, 871 (7th Cir. 1955), cert. denied 349 U.S. 920 (1955). I do not think, however, such failure establishes fraud as a matter of law. Petitioner is entitled to litigate the fraud issue without regard to the principle of collateral estoppel. In other words, the Court must decide, in the light of all the evidence, whether the underpayments of tax were "due to fraud," i.e., whether petitioner made the income omissions with "the specific purpose to evade a tax believed to be owing." *Carter v. Campbell*, 264 F.2d 930, 936 (5th Cir. 1959); *Webb v. Commissioner*, 394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. I respectfully dissent because it is not clear that the evidence has been weighed under this standard.

DRENNEN, TANNENWALD, and HALL, *JJ.*, agree with this dissenting opinion.

CHABOT, *J.*, dissenting: Petitioner was indicted on five counts of extortion and three counts of willfully filing false Federal income tax returns (sec. 7206(1)[1] ). Nine months later, he "copped a plea"; he pled guilty on the three false return counts. Four months after that, all five extortion counts were dismissed and petitioner got probation and a $2,000 fine.

On the basis of the foregoing, the majority refuse to allow

---

[1]SEC 7206. FRAUD AND FALSE STATEMENTS.

Any person who—

(1) DECLARATION UNDER PENALTIES OF PERJURY.—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * *

      *        *        *        *        *        *        *

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

petitioner to deny that his tax return for each of the years before the Court was false and "fraudulent," within the meaning of section 6653(b).[2] Having thus foreclosed petitioner from denying fraud and omission of substantial amounts of income, the majority then conclude that petitioner is liable for the civil fraud addition to tax for each of the 3 years.

From this conclusion I respectfully dissent, because—

(1) Petitioner's conviction under section 7206(1) was not a conviction of "fraud";

(2) Collateral estoppel is not applicable; and

(3) In the absence of collateral estoppel, respondent has not borne his heavy burden of proving petitioner's liability for civil tax fraud.

### (1) *Petitioner Was Not Convicted of Fraud*

The question before us is whether respondent has carried his burden[3] of proving by clear and convincing evidence[4] that petitioner has committed civil tax fraud. In *Amos v. Commissioner*, 43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965), we held that criminal "tax evasion" under section 7201[5] was equivalent to civil tax fraud under section 6653(b), even though the word "fraud" does not appear in section 7201. The majority in the instant case conclude that petitioner's conviction under section 7206(1) estops him from denying that his returns were fraudulent.

In *Amos*, we held there was sufficient identity between the requirements of section 7201 and those of section 6653(b) to warrant application of collateral estoppel as to fraud. Section

---

[2]SEC. 6653. FAILURE TO PAY TAX.

(b) FRAUD.—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *

[3]SEC. 7454. BURDEN OF PROOF IN FRAUD, FOUNDATION MANAGER, AND TRANS-FEREE CASES.

(a) FRAUD.—In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary.

(This language reflects several amendments since 1968 which have no effect on the instant case.)

[4]Rule 142(b), Tax Court Rules of Practice and Procedure. E.g., *Stone v. Commissioner*, 56 T.C. 213, 220 (1971); *Otsuki v. Commissioner*, 53 T.C. 96, 105 (1969).

[5]SEC. 7201. ATTEMPT TO EVADE OR DEFEAT TAX.

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

7206(1), on the other hand, falls far short of this identity. In particular, a conviction under section 7206(1) does not require a showing that petitioner willfully attempted *to evade tax* (*Gaunt v. United States*, 184 F.2d 284 (1st Cir. 1950);[6] *United States v. Lodwick*, 410 F.2d 1202, 1205–1206 (8th Cir. 1969)), nor does it even require a showing of an understatement of income (*United States v. DiVarco*, 484 F.2d 670 (7th Cir. 1973)).

It may be that the evidence (or the charge in the indictment) in the prior action is sufficient to prove an intent to evade or defeat the payment of taxes—i.e., the equivalent of the intent component of fraud.[7] However, collateral estoppel applies only if the matter was "essential to the judgment * * * in the first tax proceeding." *Commissioner v. Sunnen*, 333 U.S. 591, 601 (1948). See *United States v. Colacurcio*, 514 F.2d 1, 6–7 (9th Cir. 1975). It is not essential, for a conviction under section 7206(1), to prove an intent to evade or defeat the payment of taxes. *Gaunt v. United States*, 184 F.2d at 288.

From the foregoing, it is evident that petitioner's prior conviction under section 7206(1) is not a proper basis for use to estop him, in the instant case, from denying that his returns were "fraudulent."

The majority follow *Considine v. Commissioner*, 68 T.C. 52 (1977), on the basis of which they conclude that "the willful subscribing to a false return is the filing of a fraudulent return" (p. 224 *supra*). I do not agree with this conclusion and believe *Considine* should be overruled.

*Considine* included the following analysis:

---

[6]"The defendant's argument rests upon the fallacious premise that an indictment under §145(b) [I.R.C. 1939, predecessor of sec. 7201] charging the filing of a false and fraudulent return as the manner of attempting to evade or defeat payment of income taxes defines a crime the elements of which are identical with the crime defined and made punishable by §145(c) [I.R.C. 1939, predecessor of sec. 7206(1)]. It seems to us clear that the latter subsection makes it a felony merely to make and subscribe a tax return without believing it to be true and correct as to every material matter, whether or not the purpose in so doing was to evade or defeat the payment of taxes. That is to say, it seems to us that the subsection's purpose is to impose the penalties for perjury upon those who wilfully falsify their returns regardless of the tax consequences of the falsehood. Whereas subsection 145(b) condemns as felonious wilful attempts to evade or defeat taxes 'in any manner', and one manner, certainly, is by the wilful filing of a return known to be false in some material respect. Thus while the proof of an offense under subsection 145(b) may incidentally also prove an offense under §145(c), it must in addition indicate an intent in some manner to evade or defeat a tax which is due. In brief, it seems to us evident that the scope of the two subsections is different with respect to an attempt to evade or defeat taxes, and certainly the language of §145(b) is broad enough to include the filing of a false and fraudulent return as a punishable manner of attempted tax evasion. * * * [184 F.2d at 288.]"

[7]Note that respondent does not rely upon petitioner's conviction or guilty plea as evidence in the instant case; respondent relies upon them only as elements of his collateral estoppel argument.

(1) "Willfully" has the same meaning in section 7206 as it has in section 7201. *United States v. Pomponio*, 429 U.S. 10 (1976); *United States v. Bishop*, 412 U.S. 346 (1973). *Considine v. Commissioner*, 68 T.C. at 59.

(2) "Willfully" in section 7201 "has authoritatively been defined in prior judicial decisions to encompass all of the elements of fraud which are envisioned by the civil penalty described in section 6653(b)." *Amos v. Commissioner*, 43 T.C. at 55. *Considine v. Commissioner*, 68 T.C. at 59.

(3) Therefore, "willfully" in section 7206(1) encompasses all the elements of fraud in section 6653(b) (except that the latter provision requires a showing of an underpayment of tax). *Considine v. Commissioner*, 68 T.C. at 60.

In order to show under section 7206(1) that a taxpayer willfully makes a return which he does not believe to be true and correct as to every material matter, it is necessary to establish that the return as filed is not correct in a material respect, that the taxpayer at the time of filing the return did not believe it to be correct in every material respect, and that he subscribed to the return "willfully." "Willfully," in the context of section 7206, simply means a voluntary, intentional violation of a known legal duty. *United States v. Pomponio*, 429 U.S. 10 (1976).[8]

In order to show under section 6653(b) that a taxpayer is liable for the fraud addition to tax, it is necessary to establish that there was an underpayment due to fraud. Fraud is an actual intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. E.g., *Webb v.*

---

[8]In *Pomponio*, the Supreme Court stated as follows:

In *Bishop* we held that the term "willfully" has the same meaning in the misdemeanor and felony sections of the Revenue Code, and that it requires more than a showing of careless disregard for the truth. We did not, however, hold that the term requires proof of any motive other than an intentional violation of a known legal duty. We explained the meaning of willfulness in §7206 and related statutes:

"The Court, in fact, has recognized that the word 'willfully' in these statutes generally connotes a voluntary, intentional violation of a known legal duty. It has formulated the requirement of willfulness as 'bad faith or evil intent,' [*United States v.*] *Murdock*, 290 U.S. [389,] 398, or 'evil motive and want of justification in view of all the financial circumstances of the taxpayer,' *Spies* [v. *United States*], 317 U.S. [492,] 498, or knowledge that the taxpayer 'should have reported more income than he did.' *Sansone* [v. *United States*], 380 U.S. [343,] 353. See *James* v. *United States*, 366 U.S. 213, 221 (1961); *McCarthy* v. *United States*, 394 U.S. 459, 471 (1969)." 412 U.S., at 360.

Our references to other formulations of the standard did not modify the standard set forth in the first sentence of the quoted paragraph. On the contrary, as the other Courts of Appeals that have considered the question have recognized, willfulness in this context simply means a voluntary, intentional violation of a known legal duty. * * *

[429 U.S. at 12; fn. ref. omitted.]

*Commissioner*, 394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court;[9] *Powell v. Granquist*, 252 F.2d 56, 60 (9th Cir. 1958); *Wiseley v. Commissioner*, 185 F.2d 263, 266 (6th Cir 1950), revg. 13 T.C. 253 (1949); *Estate of Pittard v. Commissioner*, 69 T.C. 391, 400 (1977); *McGee v. Commissioner*, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Therefore, in order to prove an underpayment due to fraud under section 6653(b), respondent must prove that there was an underpayment of tax, that petitioner had the specific purpose and intent to evade a tax believed to be owing, and that the underpayment was due to or caused by the purpose and intent to evade tax.

In short, the quoted language of *Amos*, relied upon in *Considine* and by the majority in the instant case, was elliptical. The essential equivalent of section 6653(b) "fraud" is not the one word "willfully"; it is rather the section 7201 phrase "willfully attempts * * * to evade * * * tax." *Amos v. Commissioner*, 43 T.C. at 55. *Considine*, then, is inconsistent with both the Supreme Court's analysis in *Pomponio* and our analysis in *Amos*. *Considine* should be overruled.

### (2) *Collateral Estoppel Is Not Applicable*

The Congress has not commanded the courts concerning the doctrine of collateral estoppel in tax cases. The doctrine has been developed by the courts and results in a party to a case being forbidden to dispute a matter which is otherwise properly before the court in that case.

In *The Evergreens v. Commissioner*, 47 B.T.A. 815 (1942), a Board-reviewed opinion, we applied the doctrine in determining the tax basis of property sold by a cemetery corporation in 1934 and 1935. All issues in that case had been settled by stipulation, except for the March 1, 1913, value[10] of those lots that had been owned by the cemetery corporation on the latter date. The Commissioner had determined that the March 1, 1913, fair market value of all the lots, both those that were improved and those not improved, was $0.30 per square foot. The cemetery corporation pointed out that, in an earlier case, the Board had determined that all the improved land had a March 1, 1913, fair

---

[9]T.C. Memo. 1966–81.

[10]See sec. 1053 and its predecessors.

market value of $1.55 per square foot; the corporation argued that that earlier determination settled the matter as to the improved land for the second case. The corporation maintained that the $1.55 value was also an appropriate starting point for determining the March 1, 1913, fair market value of the unimproved land; it argued that that land should be valued at the improved land value less the cost of the improvements (for a net value of $1.35 to $1.47 per square foot).

The Board was unanimous in agreeing with the cemetery corporation that, as to the improved land, the value determined in the earlier suit was conclusive. As the Board noted, on this point the earlier determination was not to be reexamined "for, if necessary, that 'decision makes white black; black, white; the crooked, straight; the straight, crooked.' Bouvier, Law Dictionary." (47 B.T.A. at 825.) However, with two dissents, the Board concluded that it could ignore the earlier determination in deciding on the value of the unimproved land. Accordingly, the Board rejected the cemetery corporation's above-described approach as to the unimproved land. After analyzing the matter, the Board concluded that $0.35 per square foot was the appropriate March 1, 1913, fair market value for the unimproved land.

The Board's holding was approved on appeal. *The Evergreens v. Nunan* 141 F.2d 927 (2d Cir. 1944). In approving the position the Board had adopted, the Court of Appeals pointed out that the collateral estoppel doctrine does *not* mean that every matter necessary to the result in the first case is conclusively established between the parties in all future suits (141 F.2d at 929), but only those matters which are "ultimate facts" in the future suits (141 F.2d at 931). This view of the limitation of collateral estoppel has been adopted by the Supreme Court (*Yates v. United States*, 354 U.S. 298, 338 (1957)[11]), by this Court (*Amos v. Commissioner*, 43 T.C. at 54;[12] *Gammill v. Commissioner*, 62 T.C.

---

[11]"The normal rule is that a prior judgment need be given no conclusive effect at all unless it establishes one of the ultimate facts in issue in the subsequent proceeding. So far as merely evidentiary or "mediate" facts are concerned, the doctrine of collateral estoppel is inoperative. *The Evergreens* v. *Nunan*, 141 F.2d 927; Restatement, Judgment §68, comment *p.* * * * "

The dissenting Justices in *Yates* stated their agreement with the Court majority on the collateral estoppel issue (354 U.S. at 350).

[12]The rule governing the application of collateral estoppel to tax litigation has been stated by the Supreme Court to be as follows: "where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination even

607, 616 (1974)), and by the American Law Institute's Restatement of Judgments (sec. 68, comment $p^{13}$ ).

Notwithstanding the American Law Institute's description of the ultimate fact-mediate data distinction as "a clear and workable definition," in many situations the distinction has not been applied or is difficult to apply. Happily, we need not search far for guidance in applying this distinction in civil tax fraud cases, for the point was set down as follows in *Amos v. Commissioner*:

In the instant case imposition of the civil penalty prescribed by section 6653(b) depends upon a determination of *the ultimate fact that petitioner's underpayment of tax for the years 1955 through 1958 was due to fraud*. This ultimate fact for determination herein is the same ultimate fact which was determined adversely to petitioner in the prior criminal proceeding. It is therefore our decision that petitioner is conclusively bound, under the doctrine of collateral estoppel, by that prior adverse determination. *Tomlinson v. Lefkowitz*, 334 F.2d 262 (C.A. 5, 1964), affirming an unreported case (S.D. Fla. 1962). [43 T.C. at 55–56; emphasis added.]

a "mediate" fact within this context would be a fact merely *tending* to establish an essential element of the offense, rather than the essential element itself. [43 T.C. at 55, n. 6; emphasis in original.]

The willful filing of an income tax return omitting income is a fact which if true may, together with further facts, be a basis

though the cause of action is different." *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948). To this must be added the observation that collateral estoppel is not applicable to every fact which may have been determined in the first suit, or which may be an issue in the second suit. *Rex* v. *Duchess of Kingston*, 20 How. St. Tr. 355, 538 (H.L. 1776). For the estoppel to apply to *conclusively* establish a fact in question, determination of that fact must have been necessary or essential to the result in the first suit and the fact in question must be an "ultimate" fact for determination in the second suit. For this purpose, "ultimate facts" are "those facts upon whose combined occurrence the law raises the duty or right in question," as distinguished from "evidentiary facts" or "mediate datum," which are those facts "from whose existence may be rationally inferred the existence of" an ultimate fact. *The Evergreens* v. *Nunan*, 141 F.2d 927, 928 (C.A.2, 1944), certiorari denied 323 U.S. 720. [Emphasis in original.]

[13]In its 1948 Supplement to the Restatement of the Law (p. 336), the American Law Institute revised comment *p* to sec. 68 of the Restatement of Judgments (relating to collateral estoppel as to questions of fact) to read as follows:

"*p. Evidentiary facts*. The rules stated in this Section are applicable to the determination of facts in issue, i.e., those facts upon whose combined occurrence the law raises the duty or the right in question, but not to the determination of merely evidentiary or mediate facts, even though the determination of the facts in issue is dependent upon the determination of the evidentiary or mediate facts."

The institute explained (1948 Supp. at 337) its action as follows:

"Change: Original Comment p has been revised.

"Reason for Change: In Evergreens v. Nunan, 1944, 141 F.2d 927, 152 A.L.R. 1187, Judge Learned Hand defined facts in issue as those facts upon whose combined occurrence the law raises the duty or the right in question and has referred to merely evidentiary facts as mediate data. This seems to be a clear and workable definition of the two classes of facts. Comment p has been amplified so as to include Judge Hand's terminology."

No subsequent change has been made by the institute on this point.

from which an intent to evade tax may be inferred. It is not an "ultimate" fact in a section 6653(b) proceeding.

The majority correctly recognize that, in order for the judgment in the prior proceeding to be given conclusive effect, it must establish one of the ultimate facts (as defined in *The Evergreens v. Nunan, supra*) in issue in the subsequent proceeding, page 225 *supra*. The majority then state "A conclusion that a taxpayer has filed a false and *fraudulent* return from which substantial income is omitted is a finding of an ultimate fact" in a section 6653(b) proceeding, page 226 *supra*. The latter statement may well be the law, but its application here is based on the assumption that the fact essential to the section 7206(1) proceeding (the willful subscribing to a return from which substantial amounts of income have been omitted) is a conclusion that petitioner has filed a fraudulent return. As indicated above (section (1) of this dissenting opinion) that assumption is unfounded.

Therefore, I would hold that collateral estoppel does not apply to estop petitioner from denying fraud, nor from denying he willfully filed income tax returns from which substantial amounts of income have been omitted for the years before the Court.

### (3) *Analysis of the Evidence*

On the basis of the record as a whole, including the demeanor of the witnesses and the evidence relied upon by respondent (see n. 7 *supra*), although the issue is not free from doubt, I would conclude that respondent has failed to bear his heavy burden of proving fraud by clear and convincing evidence.

*Testimony of payors.*—In the instant case, petitioner claims he was an agent for the Democratic Club. Although respondent presented witnesses who testified petitioner made it known to them that they would have to make contributions to the Democratic Club in order to get the township's business and who testified that they made actual cash payments to petitioner, this evidence does not conflict with petitioner's explanation. Several of respondent's witnesses testified they understood they were making contributions to the Democratic Club. *None testified he or she understood the money was a kickback to petitioner rather than a payment to petitioner as an agent of the Democratic Club.*

*Payments in cash.*—That the kickbacks were made in cash is

consistent with fraud, as asserted by respondent, but it also is consistent with petitioner's explanation. A substantial portion of the Democratic Club's checking account deposits were in the form of cash (table IV *supra*). Also, most of the acknowledgment letters used by respondent's employees in preparing their worksheets were acknowledgments of cash (table III *supra*). Clearly, the practice of making cash payments to the Democratic Club was not unusual at the times and place involved herein. Large transfers of cash may have afforded opportunities for improprieties, but a showing of tax fraud by petitioner requires evidence far clearer and more convincing than this.

*Letters of acknowledgment.*—The lack of letters of acknowledgment, too, does little to bolster respondent's case. Even the few letters of which there is evidence show that each of the people who apparently paid petitioner, except Lynn Equipment Co. (see tables II and III *supra*), received at least one acknowledgment letter at some time during the years before the Court. Respondent indicated that the acknowledgment letters that had been used in preparing the notice of deficiency appear to have disappeared while in the custody of a Department of the United States Government. Respondent has not shown that no other letters existed. Respondent has not shown why acknowledgment letters would be sent sometimes and not other times. Respondent has not explained why a "skimming" operation, such as respondent would have us believe was in effect, would call attention to the possibility of "sticky fingers" by sending written acknowledgments sometimes and not other times. On balance, the evidence presented as to the acknowledgment letters seems to cast as much doubt on respondent's case as it does on petitioner's case.

*Unexplained deposit.*—Respondent presented evidence of an unexplained deposit of $2,240 in cash to petitioner's savings account on August 1, 1969. Respondent would have us infer that the source of the unexplained deposit was the $2,355 payment from Colonial Garage made August 1, 1969. I do not believe that one unexplained cash deposit is an indicium of tax fraud. See *York v. Commissioner*, 24 T.C. 742 (1955).

Therefore, I would conclude that respondent has failed to prove by clear and convincing evidence that petitioner is liable for an addition to tax for fraud under section 6653(b) for any of the 3 years before the Court.

An additional comment may be in order.

Under *Arctic Ice Cream Co. v. Commissioner*, 43 T.C. 68 (1964), a guilty plea in a criminal tax case can be the basis for collateral estoppel. However, in a civil tax case—

(1) If petitioner had conceded the matter out of court, then there would be no collateral estoppel;

(2) If petitioner had contested the matter, but stipulated as to a point, then there would be no collateral estoppel as to that point (*United States v. International Building Co.*, 345 U.S. 502, 505 (1953)); and

(3) If petitioner had contested the matter and had gone to trial, but conceded the matter on brief, then there would be no collateral estoppel (*Coors v. Commissioner*, 60 T.C. 368, 389–392 (1973), affd. 519 F.2d 1280, 1283 (10th Cir. 1975)).

I find it hard to distinguish between the civil cases and the matter now before us.

A wag has defined the law as "common sense, as modified by the legislature." But nothing in the statute commands the results reached by the majority.[14] The concept—and the distinctions drawn by the foregoing cases—have been designed by the courts in part for the convenience of the courts. At least as to the distinctions discussed above, the modifications of commonsense may not properly be charged to the legislature.

NIMS, *J.*, agrees with this dissenting opinion.

---

[14]The term "collateral estoppel" appears neither in the Internal Revenue Code nor in any other part of the United States Code that provides the Congress' instructions to the courts as to the Internal Revenue Code.