SAMUEL CANTERMAN AND RAE CANTERMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Canterman v. Commissioner
Docket No. 624-77.
United States Tax Court
T.C. Memo 1980-474; 1980 Tax Ct. Memo LEXIS 113; 41 T.C.M. (CCH) 248; T.C.M. (RIA) 80474; October 22, 1980, Filed Gerard Anderson, for the petitioners. Milton J. Carter, Jr., for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax and additions to tax under section 6653(b), Internal Revenue Code of 1954, [1] for the taxable years 1968 and 1969 as follows: Taxable
Deficiency
Addition to Tax
Year
in Tax
Sec. 6653(b)
1968
$20,013.81
$10,006.91
1969
12,667.66
6,333.83
The issues for decision are: (1) whether petitioners *114 failed to report income for their taxable years 1968 and 1969 in the amounts determined by respondent; [2] and (2) whether for either of those taxable years there was an underpayment of tax any part of which was due to fraud. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Samuel and Rae Canterman, husband and wife, timely filed joint Federal income tax returns for their taxable years 1968 and 1969. At the time they filed their petition herein petitioners resided in Tucson, Arizona. During 1968 and 1969, Samuel Canterman (hereinafter petitioner) was engaged in the business of wholesale and retail sale of phonograph records and phonograph supplies in Pittsburgh, Pennsylvania. He was the owner of a sole proprietorship known as Empire Distributing *115 Company. Petitioners' returns for 1968 and 1969 were prepared by a public accountant based on all the records of income and expenses that petitioners provided him. During 1968 petitioner received gross income of $72,808.90 from the sale of phonograph records and supplies. This amount was computed as follows: Customer
Amount
Sterling Distributing Co.
$70,487.90
Florence Perry Record Shop
2,321.00 [3]
TOTAL
$72,808.90
Petitioners reported $19,580.66 of this amount on their 1968 return; thus, they understated their gross sales income by $53,228.24. During 1969 petitioner received gross income from the sale of phonograph records and supplies and commission income totaling $50,583.99. This amount was computed as follows: Customer
Amount
Sterling Distribution Co.
$29,050.10
Florence Perry Record Shop
1,716.55
Commission Income (Disc Records)
5,307.84
National Record Mart, Inc.,
(Frank Fischer)
14,509.50 [4]
TOTAL
$50,583.99
Petitioners *116 reported $14,321.24 of this amount on their 1969 return; thus, they understated their gross sales income and commission income by the amount of $36,262.75. Petitioner's business did not have greater costs in 1968 and 1969 for goods sold than the amounts reported on petitioners' returns for those years. Petitioner gave Frank Fischer, the representative of National Record Mart, Inc., a receipt only for the first of several sales made to that company during 1969. Petitioner Samuel Canterman was indicted for violation of section 7206(1) based on his alleged willful filing of false and fraudulent returns for 1968 and 1969. He pleaded guilty to the count for 1968 and the remaining count was dismissed. He was sentenced to three years imprisonment and two years probation (the execution of the prison sentence being suspended) and was fined $4,000. The Commissioner determined deficiencies in petitioners' Federal income tax for their taxable years 1968 and 1969 based upon the above-mentioned understatements of income. He further determined additions to tax for both years under section 6653(b) based on his determination that part of the underpayments in both years was due to fraud. *117 ULTIMATE FINDING OF FACT Petitioners' underpayments of Federal income tax for their taxable years 1968 and 1969 were due to fraud. OPINION During 1968 and 1969, petitioner engaged in the wholesale and retail sale of phonograph records and supplies through his sole proprietorship, Empire Distributing Company. Petitioners concede that on their 1968 joint Federal income tax return they underreported the gross sales income from the record business by $53,228.24. However, they contend that they incurred, but failed to deduct, additional cost of goods sold for that taxable year in the amount of $64,939.50. Respondent denies that petitioners incurred any cost of goods sold in excess of the amount initially reported, and further has determined an addition to tax for fraud under section 6653(b) for petitioners' taxable year 1968. Petitioners also understated, on their 1969 joint Federal income tax return, gross sales from the record business either by $36,074.49, which amount petitioners concede, or by $50,583.99, which is the amount determined by respondent. Again, petitioners contend that they incurred, but failed to deduct, additional cost of goods sold for their taxable *118 year 1969 in the amount of $31,837.50. Respondent again denies that petitioners incurred any cost of goods sold in excess of the amount they initially reported on their return. Respondent determined the fraud penalty for petitioners' taxable year 1969 also. Petitioner was convicted, under section 7206(1), of willfully filing a false and fraudulent return for taxable year 1968. First, we must decide the amount of the deficiencies for the two taxable years before us. Petitioners have the burden of proving that respondent's deficiency determinations are incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. For taxable year 1968, petitioners would rebut the presumptive correctness of respondent's determination solely by attempting to prove that petitioner incurred cost of goods sold in his record business (specifically, the costs of buying records) in excess of the amount reported on the 1968 return. Petitioner allegedly purchased these records from a panel truck driven by a Herb Goldstein of Atlas Record Sales Company but did not give any of the alleged receipts from these purchases to his accountant when *119 his returns were being prepared. Petitioner's explanation about these additional costs and why he did not give the receipts to his accountant is not worthy of belief. It is inconceivable to us that petitioner would not give his accountant receipts for purchases of goods from a purported major supplier. Also, if petitioner had costs as he now claims, his business would have operated at a loss for both years in issue and he testified that he was not operating at a loss. In addition, one of the Commissioner's agents conducted a very thorough search for Herb Goldstein and his record company. The agent's search showed quite clearly that Herb Goldstein and Atlas Record Sales Company did not exist. Petitioner's self-serving statements about these additional costs have not established by a preponderance of the evidence that such costs were incurred. Because petitioners have not carried their burden of proof on this issue, they are not entitled to any deduction of costs greater than the amount claimed on their 1968 return. Therefore, since petitioners conceded that they understated their gross sales income from the record business in 1968 by $53,228.24, and since they have failed *120 to prove any increase in cost of goods sold for that year, respondent's deficiency determination for their taxable year 1968 must be sustained. Petitioners contend that respondent's deficiency determination with regard to taxable year 1969 is erroneous for two reasons: (1) they contend that the cost of goods sold in the record business is greater than the amount they reported on their 1969 return; and (2) they deny that petitioner sold an unreported $14,509.50 worth of records to National Record Mart. Petitioners' contention with regard to the cost of goods sold amount arises from the same purported dealings with the mysterious Herb Goldstein. Such claims with respect to 1969 are rejected for the same reasons and upon the same evidence that led us to reject them for the taxable year 1968. Thus, we hold that petitioners' cost of goods sold with regard to the record business was not in excess of the amount originally reported on their 1966 joint Federal income tax return. In addition, petitioners contend that respondent overcalculated the amount of income received from sales made to a specific customer.Petitioners concede that $688.50 worth of unreported record sales were made *121 to a Frank Fischer (Fischer) of National Record Mart, Inc., during 1969, but they deny that they received $14,509.50 of unreported record sales income from Fischer during 1969 as respondent has determined. The amount of income that petitioner received from Fischer in 1969 was the subject of disputed testimony. Petitioner testified that he made only one sale to Fischer and that he gave Fischer a receipt for that sale. Fischer testified that he made a significant number of purchases from petitioner during 1969 and that petitioner would not give him receipts for any purchases after the first one. Fischer testified that petitioner said that he did not want to give Fischer any receipts because he did not want to show the sales on his records. After observing these two witnesses on the stand and taking into consideration their testimony and demeanor, we find Fischer to be more believable than petitioner and, therefore, find that petitioner did make the additional sales to Fischer in 1969.
Having made our findings with regard to petitioners' unreported income and costs of goods sold, which findings sustain respondent's deficiency determination for petitioners' taxable year 1969, we *122 now turn to the fraud issue. For there to be fraud there must have been an "actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941). Whether fraud exists is an issue of fact which must be determined on the basis of the whole record. Foster v. Commissioner, 391 F.2d 727 (4th Cir. 1968), remanding on another issue a Memorandum Opinion of this Court. [5] Respondent has the burden of proving by clear and convincing evidence that part of the underpayment of tax by petitioners was due to fraud with the intent to evade taxes. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Stone v. Commissioner, 56 T.C. 213 (1971); Otsuki v. Commissioner, 53 T.C. 96 (1969).Proof of fraud can be shown by circumstantial evidence because only rarely can it be shown by direct proof. Foster v. Commissioner, supra.
Consistent, substantial understatements of income, without more, support the inference of willfully fraudulent *123 conduct. See Holland v. United States, 348 U.S. 121 (1954); Schwarzkopf v. Commissioner, 246 F.2d 731 (3d Cir. 1957), affg. a Memorandum Opinion of this Court. [6] We have found that petitioner received income in 1968 and 1969 in the amounts of $72,808.90 and $50,583.99, respectively. Petitioner reported income in the amounts of $19,580.66 and $14,321.24 for 1968 and 1969, respectively. Thus, in each year petitioner understated his income by over 50 percent, a very substantial amount over the two years. However, we do not have to decide if the large understatements for the two years, without more, would indicate that the understatements were intentional. There is additional evidence of fraud from petitioner's conduct for each year in issue. On September 19, 1974, petitioner pleaded guilty to violating section 7206(1) for 1968. This Court has held that an individual who has been convicted under section 7206(1) is collaterally estopped from denying, in a case involving section 6653(b), that his Federal income tax return for that year was fraudulent. Considine v. Commissioner, 68 T.C. 52 (1977); *124 Goodwin v. Commissioner, 73 T.C. 215 (1979). Therefore, respondent's position that part of the petitioners' underpayment for 1968 was due to fraud with the intent to evade taxes must be upheld. We have found that in 1969 petitioner could $14,509.50 worth of records to Fischer as agent for National Record Mart, Inc. He tried to show that he could not have made the sales to Fischer by stating that he was in Cleveland on the date of one of the sales. Petitioner introduced no other evidence to show that he was out of town. If petitioner were in Cleveland on that date, as he claims, then he could have introduced evidence corroborating his testimony. Since petitioner has failed to introduce evidence within his possession which, if true, would be favorable to him, the presumption is raised that, if produced, it would have been unfavorable to him. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). The evidence shows that petitioner only gave Fischer a receipt for one of these sales because he did not want to show those sales on his records. "[Covering] up sources of income [and *125 the] handling of one's affairs to avoid making the records usual in transactions of [that] kind" has been held to be indicative of fraud. Spies v. United States, 317 U.S. 492 at 499 (1943). Petitioner's dealings with Fischer indicate that he was trying to conceal some of his 1969 income by not giving receipts to Fischer, thus enabling him to evade some of his taxes. We conclude that respondent has shown by clear and convincing evidence that petitioner underpaid his taxes in 1969 with the intent to evade them. In summary, we sustain respondent's presumptively correct determination that petitioners understated their taxable income on their Federal income tax returns for taxable years 1968 and 1969 by the amounts determined by respondent. We further find that respondent has carried his burden of proving fraud for those two years and, thus, was correct in determining additions to petitioners' tax for both years under section 6653(b). Because of respondent's concession concerning petitioners' allowable medical expense deduction, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. The other contested adjustments (determination of petitioners' sales tax deduction and petitioner's self-employment tax liability) are solely derivative, i.e., they depend on our determination of the amount of petitioners' unreported income. Respondent has conceded that petitioners' medical expenses are deductible.↩
3. The parties have stipulated to these two amounts.↩
4. The parties have stipulated to the first three amounts and we have determined this last amount from the evidence before us.↩
5. Foster v. Commissioner, T.C. Memo. 1965-246↩.
6. Schwarzkopf v. Commissioner, T.C. Memo. 1956-155↩.