T.C. Summary Opinion 2007-162


UNITED STATES TAX COURT


WILLIE ALBERT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17520-05S.          Filed September 10, 2007.


<u>George L. Willis</u> and Jeffrey Alberty (specially recognized), for petitioner.

<u>Susan S. Hu</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent

section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $1,364 deficiency in the 2003 Federal income tax of Willie Albert, a.k.a. Guillermo Gonzalez, (petitioner). Respondent determined that petitioner failed to report $6,974 as compensation for services and $12,258 in gambling income. Petitioner conceded that he received and failed to report $6,974 as compensation for services in 2003. The issue for decision is whether petitioner had $12,258 in taxable gambling income.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition was filed, petitioner resided in Moreno Valley, California.

Petitioner was an attendee at an off-track betting site operated by the Los Angeles Turf Club, Inc. In 2003, petitioner presented for payment winning tickets totaling $12,258, for which he signed Forms 5754, Statement by Person(s) Receiving Gambling Winnings.[1]

---

[1] Form 5754 (2002) states the following above the signature line:

> Under penalties of perjury, I declare that, to the
>                                                    (continued...)

In November 2003, the Social Security Administration sent a letter to petitioner, directing him to provide statements from the individuals for whom he collected winnings, the dates and amounts thereof, and any commissions or fees received. In reply, petitioner submitted several Social Security Administration Forms SSA-795, Statement of Claimant or Other Person,[2] signed by one Romeo N. Umali (Mr. Umali), stating that he had petitioner sign for the winning tickets "so my wife will not know I'm playing the horses" and setting forth the dates thereof, the amounts of the winnings, and the fees paid to petitioner for the 2003 taxable

---

[1](...continued)
best of my knowledge and belief, the names, addresses, and taxpayer identification numbers that I have furnished correctly identify me as the recipient of this payment and correctly identify each person entitled to any part of this payment and any payments from identical wagers.

[2] Form SSA-795 (2002) states the following above the signature line:

I declare under penalty of perjury that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge. I understand that anyone who knowingly gives a false or misleading statement about a material fact in this information, or causes someone else to do so, commits a crime and may be sent to prison, or may face other penalties, or both.

year as follows:

| Date | Amount | Fee Received |
|---|---|---|
| 1/8/03 | $4,123 | $25 |
| 1/23/03 | 1,435 | 25 |
| 1/30/03 | 1,400 | 25 |
| 1/31/03 | 948 | 25 |
| 3/23/03 | 604 | 25 |
| 4/6/03 | 1,191 | 25 |
| 4/13/03 | 719 | 25 |
| 4/19/03 | 920 | 25 |
| Total | 11,340 | 200 |

Respondent issued a notice of deficiency for petitioner's 2003 taxable year. Respondent determined a $1,364 deficiency, arising from $12,258 in unreported gambling income and $6,974 as compensation for services.

## Discussion

The Commissioner's determinations in a notice of deficiency are presumed correct, and the burden is on the taxpayer to prove that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, pursuant to section 7491(a)(1), the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue." The burden will shift only if the taxpayer has complied with the substantiation requirements and "has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews". Sec. 7491(a)(2). Petitioner has not alleged or proven that

section 7491(a) applies.  Accordingly, the burden remains on petitioner.

Petitioner contends that he should not be held liable for a tax on the additional $12,258 of gambling income for the 2003 taxable year because he was a mere "conduit" (i.e., a "runner" or "ten percenter") and that Mr. Umali was the actual recipient of the gambling income.

In general, section 61(a) defines the term "gross income" to include "all income from whatever source derived" unless it is specifically excepted.

Under the claim of right doctrine, if a taxpayer receives money under a claim of right and without restriction as to its disposition, then he has received income that he is required to report even though it may still be claimed that he is not entitled to retain the money and may be ordered to restore its equivalent.  N. Am. Oil Consol. v. Burnet, 286 U.S. 417 (1932). But under the conduit theory, if a person receives funds merely to enable him to act as a conduit of the funds to another, then he does not have a claim of right to the funds, and the funds received are not income to him to the extent that he passes them on to the person for whom the funds were intended.  Goodwin v. Commissioner, 73 T.C. 215, 232 (1979).

The outcome in this case rests on petitioner's credibility and on his evidence, which consisted of his testimony, his bank statements, and the Forms SSA-795 signed by Mr. Umali.

Petitioner testified that he cashed the tickets and signed the Forms 5754 for Mr. Umali because Mr. Umali did not want his wife to find out he was gambling "when the information goes to the house". But respondent entered into evidence a certified copy of a transcript of Mr. Umali's tax return, showing that Mr. Umali received gambling income in his own name for that year.

Petitioner testified that he did not gamble or cash tickets for any other persons in 2004. But respondent entered into evidence a certified copy of a transcript of petitioner's 2004 tax return showing that a Form W-2G, Certain Gambling Winnings, was issued to him under his alias. Thereafter, petitioner changed his testimony to state that he had no "recollection", and "it could if there is a spillover." There are other inconsistencies in petitioner's testimony.[3]

When questioned by the Court, petitioner testified that he did not know that because he signed the Forms 5754, the IRS would look to him to pay the tax even though the information would be

---

[3] Throughout the trial, petitioner stated that Mr. Umali liked petitioner to cash his tickets because petitioner did not charge Mr. Umali anything. But petitioner also testified that Mr. Umali gave petitioner $25 at most or "lunch or something", while Forms SSA-795 stated that petitioner received $25 on each occasion.

sent to his house because he "did not know the implication" of the forms. Petitioner also testified that he did not know that the forms he signed were official Government forms because he did not read or scrutinize them. The Court simply does not accept petitioner's self-serving testimony. See Geiger v. Commissioner, 440 F.2d 688, 689 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Urban Redev. Corp. v. Commissioner, 294 F.2d 328, 332 (4th Cir. 1961), affg. 34 T.C. 845 (1960).

Petitioner submitted into evidence copies of his bank statements in an attempt to show that his Social Security benefits were not reduced because the Social Security Administration had accepted Mr. Umali's statements that the winnings did not belong to petitioner. But petitioner did not submit any documentation from the Social Security Administration to corroborate his claim. Moreover, petitioner's Social Security benefits fluctuated by as much as $100 from month to month. Therefore, the Court cannot determine whether his Social Security benefits were reduced on account of his receipt of the gambling income.

Additionally, petitioner submitted into evidence copies of his bank statements in an attempt to show that he did not receive the gambling income because there were no extreme influxes or withdrawals of income for the year. But the bank statements do not shed any light on this issue. The Court cannot make a

determination based on an examination of petitioner's bank statements as to whether he received the gambling income or not. The Court cannot make that determination because there is no evidence as to the sources of the other deposits[4] or charges for recurring items.

Finally, petitioner did not call any witnesses to corroborate the statements contained in the Forms SSA-795 or his testimony. Moreover, petitioner failed to call Mr. Umali himself as a witness to testify to the veracity of the statements that Mr. Umali made in the Forms SSA-795 or to corroborate petitioner's testimony.[5] Accordingly, respondent's determination is sustained.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.

---

[4] For example, statement period Apr. 2--May 1, 2003, showed deposits of $1,240, $1,000, $650, $1,000, and $1,100. Statement period May 2--June 2, 2003, showed deposits of $650, $150, $290, and $30 (other than the $1,280 that petitioner claimed was from his wife's paycheck).

[5] Respondent represents that Mr. Umali has been out of the country since January 2006.